DOMENIC SANTILLI *vs.* ORIGINAL BRADFORD SOAP
WORKS, INC.

DOMENIC SANTILLI *vs.* LIBERTY MUTUAL INSURANCE
COMPANY.

APRIL 12, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

306

ANDREWS, J.   These are an employee's original petitions for compensation under the workmen's compensation act, general laws 1938, chapter 300, as amended by public laws 1954, chap. 3297.

The two cases were heard together before a single commissioner of the workmen's compensation commission.   In the case of Domenic Santilli v. Liberty Mutual Insurance Company an award was made of $15.73 a week for total incapacity from October 6, 1953, $15.73 a week for 100 weeks commencing November 25, 1953 for the loss of his left leg above the knee, and for medical and hospital bills.   In the case of Domenic Santilli v. Original Bradford Soap Works, Inc. the petition was denied and dismissed.   Hereafter Original Bradford Soap Works, Inc. will sometimes be referred to as Bradford and Liberty Mutual Insurance Company as Liberty.   In the Liberty case both parties appealed to the full commission which affirmed the decree of the trial commissioner, and thereafter both parties appealed to this court.   In the Bradford case petitioner alone appealed to the full commission, which affirmed the decree, whereupon he appealed to this court.

Seasonably after taking its appeal, Liberty filed in this court a motion to stay the decree appealed from.   This mo-

tion was heard and granted and an order was entered staying the effect of the decree. After the case had been heard on the merits, petitioner moved to vacate the stay and to dismiss the appeal on the ground that Liberty had not complied with the decree. We heard this motion and reserved decision. We are now of the opinion that the motion comes too late and it is therefore denied.

In May 1942 petitioner while in the employ of Original Bradford Soap Works, Inc. was injured in the following manner. He was tipping down a drum of grease when it fell against the back of his left knee and then against his left ankle. The back of his left knee was scratched somewhat and turned black and blue but his ankle was so badly injured that it incapacitated him for some time. The petitioner and Bradford entered into a preliminary agreement dated May 25, 1942 which described the nature and location of the injury as "sprained left ankle." After a few weeks he returned to work and signed a settlement receipt.

The back of his left knee bothered him intermittently and he made several visits to the late Dr. Senerchia, to whom his employer sent him for his ankle injury. However, he worked steadily until October 6, 1953 on which date, following a severe attack of pain in the knee area, he entered Saint Joseph's Hospital. His condition was diagnosed as a popliteal aneurysm, and Dr. Edmund C. Curran removed it by surgery. The petitioner seemed to be doing well until, as the doctor recalled it, for some reason or other he put his leg in hot water and brought on gangrene, which necessitated the amputation of his left leg above the knee on November 25, 1953. The petitioner claimed to have been totally disabled since October 6, 1953 and in fact did not work after that date.

The petition against Bradford, filed May 31, 1955, states that on July 3, 1953 petitioner was injured in the following manner: "Lifting barrel—Hernia"; "Injury to left leg";

and that the character and extent of the injury was "Lost left leg (amputated above knee); and hernia right side."

The petition against Liberty, filed August 30, 1955, states that "on May 15, 1955" petitioner was injured by being struck by a drum of soap and that the character and extent of the injury was "Loss of left leg after a left ankle injury."

The petitioner waived his claim for hernia in the case against Bradford and in his brief made no attack upon the decree beyond saying that the decisions should have been the same in both cases.

In the case against Liberty petitioner claims the commission committed two errors: first, in awarding him specific compensation for 100 weeks instead of for 255 weeks, and secondly, in fixing his average weekly wage as of the time of the accident in 1942 rather than as of the time of his disability in 1953.

Liberty's objections to the decree are: (1) that the finding of the commission that petitioner sustained a personal injury by accident arising out of and in the course of his employment with Bradford was erroneous because there was no relation between that finding and the date of the injury, the nature of the injury or the name of the employer; (2) that there was no legal evidence in support of the finding of the commission that as a result of the popliteal aneurysm petitioner suffered the amputation of his left leg; (3) that there was no legal evidence to support the finding of the commission that petitioner had been totally disabled since October 6, 1953; (4) that petitioner was barred by the statute of limitations because of the preliminary agreement and the fact that the petition was not filed within two years after the occurrence of the injury; and (5) that it is not a proper party to this proceeding. These objections constitute in substance the reasons of appeal.

We shall first take up Liberty's objections. There is much force in the first one. The petition does not disclose that Bradford was the employer, nor does it attribute·the in-

capacity to the physical injury of 1942 to the back of the left knee. However, there was no motion made by Liberty to require petitioner to make the allegations more specific or to have them conform to the provisions of the workmen's compensation act. P. L. 1954, chap. 3297, art. III, sec. 3 (g). Furthermore, at the commencement of the hearing the commissioner asked if there was any question that Bradford was the employer in both cases. All parties agreed that such was the case. They also agreed that Liberty was the insurance carrier at the time of the accident and that Employers Liability Insurance Company was the insurer at the time of the incapacity in October 1953. At the end of petitioner's case counsel for Liberty stated he had not come prepared to meet the "left knee injury" and he was granted a two weeks' continuance.

We have noted Liberty's claim that the commission described the physical injury to the upper leg as an injury to the "left knee," whereas it was in fact an injury to the *back* of the left knee. As we have just pointed out, counsel for Liberty, after hearing petitioner's evidence, himself characterized the injury as to the "left knee." Moreover at the hearing before us counsel for Liberty could not point out wherein it suffered any prejudice by reason of the absence of a more precise allegation in the petition. While the loose pleading to be found in both petitions is not approved, nevertheless in view of what we have just pointed out, we feel that the description of this physical injury by the commission was sufficiently accurate and was in no way prejudicial to Liberty. The date of the accident should have been given as May 15, 1942 rather than May 15, 1955. This was obviously a typographical error. Liberty knew the date of the accident and was in no way prejudiced by this mistake. In our judgment it is too late to take advantage of these harmless variances between the pleadings and proof.

Liberty's second point is without merit. Doctor Curran was asked in a hypothetical question, based on evidence pre-

viously introduced, whether there was reason to believe that there was causal connection between this physical injury and the aneurysm. He replied: "If the man had received constant treatment since, it would be reasonable to think so." Liberty's counsel cross-examined Dr. Curran as to what he meant by "constant treatment" and he said he meant constant complaints. There was evidence of such complaints and also of frequent visits by petitioner to the late Dr. Senerchia for treatment of that area.

In its brief, Liberty suggests that petitioner's putting his leg in hot water was the cause of the loss of the leg. It should have gone further, since it had the burden of proof on this phase of the case. *Gorral* v. *Hamlyn & Son,* 38 R. I. 249, as limited by *Campbell* v. *Walsh-Kaiser Co.,* 72 R. I. 358. The test in such cases is good faith and reasonable conduct. In the circumstances the commission could well have found that Liberty had failed to sustain the burden of proving that petitioner had not satisfied that test.

Liberty's third point is well taken. It claims that there is nothing to warrant the finding of total incapacity after petitioner left the hospital for the last time on December 11, 1953. The full commission stated: "Granted that there is no direct answer by the Petitioner's medical witness that the Petitioner was totally disabled, we are of the opinion that from all the facts an inference can be drawn that compels a finding of total disability. The nature of the injury, the resulting surgery and the Petitioner's physical condition since the operation clearly supports a finding of total disability." We find no evidence as to petitioner's physical condition after the amputation. The burden of proof on this issue was upon petitioner and he failed to sustain it up to the date of the decree, May 31, 1956. Consequently the decree must be amended to terminate compensation for total incapacity on December 11, 1953.

Liberty's claim of limitations is without merit. It states its position on this point as follows: "The basic question

presented is whether or not an employee has more than one cause of action for compensation for incapacity for work as a result of a single accident." The petitioner never had a cause of action as a result of the physical injury *to the back of his left knee* until it incapacitated him in October 1953. *Rosa* v. *George A. Fuller Co.,* 74 R. I. 215; *Geyer* v. *Callan Construction Co.,* 81 R. I. 247.

Liberty makes reference to two Oklahoma cases for the proposition that when an employee does not include in the agreement all the physical injuries he knows he received in an accident, he is deemed to have elected to waive those not included. We are not impressed with this contention. We are dealing with an agreement and it may well be that the employer would not agree to the inclusion of the omitted physical injury. A waiver presupposes a choice. Since the *Rosa* and *Geyer* cases hold that until incapacity results from a particular physical injury the employee has no claim, it would seem that only the physical injury causing the incapacity need be included in the agreement.

Liberty's fifth and last claim is likewise without merit. Liberty admits that the *Geyer* case is squarely against his position as to ordinary compensation, but it relies upon the statement in that opinion that the insurance company could be sued direct *at least as far as ordinary compensation is concerned*—all that was being asked for in that case —as an indication that the insurance company cannot be sued directly for any other type of compensation. Liberty suggests no reason for such a distinction and none occurs to us. The petitioner did not have a cause of action, that is, could not claim specific compensation for the loss of his leg until he lost it. *Larkin* v. *George A. Fuller Co.,* 76 R. I. 395. Since this occurred after the amendment allowing suits directly against the insurer, we are of the opinion that he can sue the insurer directly for specific compensation.

We now turn to the petitioner's appeals and will first consider his appeal against Liberty. Liberty takes the po-

sition that petitioner did not preserve his right to attack the failure of the trial commissioner to give compensation for 255 weeks, which was what the law provided at the time petitioner lost his leg. It relies on *Brown & Sharpe Mfg. Co.* v. *Lavoie*, 83 R. I. 335, 116 A.2d 181. At page 183 this court stated: "On an appeal from the decree of a single commissioner as affirmed by the full commission we will review only those matters which were brought by specific reasons of appeal to the full commission."

The petitioner's reasons of appeal to the full commission in the case against Liberty read as follows: "(1) That the findings and opinions of this Commissioner and the Decision of the Commissioner filed therein are against the law in that the Petitioner's average weekly wage should have been the average weekly wage at the time of his disablement, to wit, October 6, 1953, and that the statute applicable to him so far as weekly payments, specific compensation, medical and hospital bills should have been the law in effect on October 6, 1953, the date of disablement, and not the date of the accident, namely May of 1942. (2) That said Decree is against the law as set forth in paragraph 1 above."

Our quotation from *Brown & Sharpe Mfg. Co.* v. *Lavoie, supra,* is but a statement of the requirement of the act. Article III, sec. 3 (g), contains the following provision relative to appeals from a single commissioner to the full commission: "* * * the appellant shall file with the clerk of the commission reasons of appeal stating specifically all matters determined adversely to him which he desires to appeal * * *." The reasons of appeal that we have quoted do not satisfy the act for they not only do not specifically point out the error of the single commissioner, but they are actually so worded as to mislead the commission by indicating that the act gave specific compensation for a different number of weeks for the loss of a leg above the knee in 1942 than in 1953, whereas in fact the act gave 255 weeks

in both years. We are bound by the act and must therefore reject petitioner's appeal on this point.

We need not decide whether petitioner's average weekly wage should have been determined as of the time of the accident in 1942 or when he became incapacitated in 1953, because there is a total failure of proof as to what his weekly wage was in 1953. When he started to prove his average weekly wage he was stopped by the commissioner. Later he was given permission to continue such proof but he failed to take advantage of it.

There remains for consideration the appeal of the petitioner from the dismissal of his petition against Original Bradford Soap Works, Inc. It is abundantly clear that the insurance companies are the substantial respondents in both these cases and were so treated by all concerned and that the cases were brought to determine which one of them should pay any compensation that might be awarded. We have already shown that Liberty is the insurance company to pay the compensation, and we are satisfied that petitioner prosecuted his appeal in the case against Bradford *solely* against the possibility that he might lose his case against Liberty. However this may be, the commission was fully justified in dismissing the petition against Bradford which petition alleged that the injury occurred on July 3, 1953 and there was no proof of an injury at or about that date.

In the case of Domenic Santilli v. Original Bradford Soap Works, Inc., Equity No. 2539, the petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission.

In the case of Domenic Santilli v. Liberty Mutual Insurance Company, Equity No. 2540, the petitioner's appeal is denied and dismissed, the respondent's appeal is sustained in part, the decree appealed from is modified as above stated, otherwise it is affirmed, and on April 17, 1957 the

parties may present to this court for approval a form of decree, in accordance with this opinion, for entry by the workmen's compensation commission.

## ON MOTION FOR REARGUMENT.

### MAY 14, 1957.

PER CURIAM. After our opinion herein was filed, the petitioner asked and received permission to file a motion for leave to reargue. In this motion he seeks to reargue each of the points decided against him.

We have carefully considered those points and the only one which may conceivably present a basis for reargument is the one involving the number of weeks for which he should be paid specific compensation for the loss of his leg. It is clear that the single commissioner and the full commission were unaware that the statute was the same at the time of the accident as it was at the time when petitioner became incapacitated, namely, that it provided 255 weeks of specific compensation. Therefore, we will hear the parties as to whether we should modify the commission's decree and order the respondent to pay the petitioner compensation for 255 weeks.

To that extent only, the petitioner's motion for leave to reargue is granted.

*John Quattrocchi, Jr.,* for petitioner.

*Charles H. Anderson,* for Original Bradford Soap Works, Inc.

*Worrell & Hodge, Eldridge H. Henning, Jr.,* for Liberty Mutual Insurance Company.