Strafford
No. 78-226

## CITY OF ROCHESTER

### AND

## INSURANCE COMPANY OF NORTH AMERICA

v.

## WILLIAM SMITH

June 27, 1979

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester (*Theodore Wadleigh* orally), for the plaintiffs.

*Mullaney & Richardson P.A.,* of Rochester (*Stanley J. Mullaney* orally), for the defendant.

BROCK, J. This workmen's compensation case concerns an auxiliary fireman who was injured by the inhalation of smoke and fumes while fighting a fire in Rochester on July 4, 1976. The labor commissioner found that the fireman was partially disabled and entitled to benefits under RSA 281:25 as a result of an accidental injury arising out of and in the course of his employment.

The fireman, who is the defendant here, did not appeal from the labor commissioner's decision, but the city of Rochester and its workmen's compensation carrier, the Insurance Company of North America, did. After a de novo hearing in the Strafford County Superior Court, the court found that the defendant Smith was 100% disabled as a result of his accidental injury, which consisted of heart and lung "conditions," and awarded him total disability benefits under RSA 281:23. Plaintiffs' exceptions to the court's findings and rulings were reserved and transferred by *Mullavey,* J.

The plaintiffs argue that the evidence presented at trial did not support findings that the defendant is totally disabled by heart or lung disease within the meaning of our workmen's compensation statute. We agree.

■ ■ When the superior court undertakes a de novo review in workmen's compensation cases, it substitutes its judgment for that of the labor commissioner. RSA 281:37; *Charles & Nancy, Inc. v. Zessin,* 118 N.H. 556, 558, 391 A.2d 880, 882 (1978). The trial court's determination as to the existence of an injury suffered by a claimant and the extent of the disability resulting therefrom are questions of fact that will not be disturbed if there is competent evidence in the record from which that decision could reasonably be made. *Lessard v. City of Manchester Fire Dept.,* 118 N.H. 43, 46, 382 A.2d 365, 367 (1978); *Kacavisti v. Sprague Electric Co.,* 102 N.H. 266, 155 A.2d 183 (1959).

■ The claimant, however, has the burden of proving by competent evidence both the existence of a compensable accidental injury and the extent of his disability. *Armstrong v. Lake Tarleton Hotel Corp.,* 103 N.H. 450, 452, 174 A.2d 410, 412 (1961); *Blecatsis v. Manchester Gas Co.,* 103 N.H. 542, 543 (1961).

■ We have recently recognized the distinction between legal causation and medical causation of an accidental injury in workmen's compensation cases. *New Hampshire Supply Co. v. Steinberg,* 119

N.H. 223, 400 A.2d 1163 (1979). We said there that the claimant, in addition to proving legal causation, that is, that the injury is work-connected, must also prove medical causation. *Id.* Although RSA 281:2 V-a relieves a claimant fire fighter of his usual burden of proving legal causation, that is, that his heart (or lung) disease is causally related to his employment, it does not relieve him of his obligation to prove medically that he in fact has heart or lung disease and that he is disabled by the disease. Nor is it sufficient that a claimant merely testify that he is suffering from some unspecified kind of lung or heart condition. We have acknowledged that medical testimony is sometimes unnecessary "because the matters involved fall within the realm of common knowledge." *Bentley v. Adams*, 100 N.H. 377, 379, 128 A.2d 202, 204 (1956). We have also recognized, however, that there are "situations where the questions are such that only an expert may be expected to know about them, and in such cases expert testimony is required." *Id.*

■ Questions relating to the existence, nature, and extent of disability caused by heart and lung disease usually involve complicated medical questions, so that reliance on lay testimony alone in resolving issues concerning them is not justified. 3 A. LARSON, WORKMEN'S COMPENSATION LAW § 79.54, at 15-272 (1976). Such questions involve matters peculiarly within the knowledge of experts, and some medical evidence or testimony of medical experts is indispensable to their proof. *See Blecatsis v. Manchester Gas Co.*, 103 N.H. 542, 543–44, 176 A.2d 711, 712 (1961); 3 A. LARSON *supra* at 15-286.

The questions before us are whether there was competent evidence before the trial court from which it could reasonably determine that the defendant had a compensable heart and lung disease that rendered him totally disabled.

The defendant, through his own testimony, offered evidence in an effort to prove that he was suffering from both a lung condition and a heart condition. The only medical evidence offered, however, was that of Dr. Richard A. Petrie, a specialist in internal medicine and cardiology, who had examined the defendant, at the request of the plaintiff insurance company, on two occasions.

Dr. Petrie testified that when he first examined the defendant two months after the smoke inhalation incident, he concluded, on the basis of a physical examination and the defendant's own statements, that the defendant had sustained an episode of acute bronchitis, chemically induced by the fire. After follow-up laboratory tests, Dr. Petrie wrote

a report, which was admitted into evidence, indicating that the defendant's pulmonary function was then within normal limits, and that the acute bronchitis appeared to have resolved itself. He concluded, solely from the defendant's statements, that the defendant might have a residual disability in the form of a heightened sensitivity to smoke and some cleaning fluids.

The only evidence offered by the defendant to prove that he had a heart condition was a brief report of an electrocardiogram (EKG), done at the time of the defendant's emergency room admission following the smoke inhalation, which indicated that the defendant may have had a heart murmur and right bundle branch block. Dr. Petrie testified, however, that he had noticed no heart murmur during his physical examinations of the defendant. He did not testify as to what disease or disability a heart murmur might indicate. He testified that the bundle branch block was "a normal variance in a small percentage of people" and that, as a cardiologist, he did not feel the need to investigate it further because the defendant did not show any symptoms.

The defendant testified that he was being treated at a Veterans Administration hospital in Massachusetts, and that he had prescriptions for several medications, but did not reveal the nature of his illness or treatment. When questioned by defendant's counsel, Dr. Petrie acknowledged that the medications are sometimes prescribed to relieve angina pains.

Finally, the defendant attempted to introduce evidence relating to a heart condition known as an "intramuscular myocardial bridge." While this condition was never fully described to the court, it apparently was referred to in some unidentified medical reports. The trial court properly sustained hearsay objections to the introduction of these medical reports into evidence, because a proper foundation for their admission was not laid and Dr. Petrie had not used them at all in formulating his opinion. After Dr. Petrie reviewed the inadmissible reports privately, the trial court allowed defense counsel to question him on a hypothetical basis. Dr. Petrie testified that, in his opinion, if he had performed additional tests on the defendant, he might have discovered an intramuscular myocardial bridge, which he termed "an extremely rare problem." Over the continuing objection of counsel for the plaintiffs, the doctor testified that such a condition might or might not be disabling, depending on its physical position. The trial court finally sustained plaintiffs' objection to this line of questioning on the grounds that the doctor's testimony was "too far afield." There was no

evidence admitted from which the trial court could conclude that the defendant had an intramuscular myocardial bridge.

The trial court found that the defendant had met his burden of proving his claims that he was totally incapacitated by both heart and lung disease. The meager evidence presented at trial did not include any competent medical evidence from which the trier of fact could reasonably conclude that the defendant was suffering from heart disease. While the evidence is sufficient to sustain a finding that defendant suffered from a compensable lung disease, it is insufficient to sustain a finding that the defendant was either totally or partially disabled by lung problems, at least after August 31, 1976, the date of Dr. Petrie's first examination of the defendant.

In interpreting our workmen's compensation statute, we have observed that even if a claimant is disabled in a medical sense, he is not entitled to compensation unless it produces a loss in earning capacity. *Desrosiers v. Dionne Bros. Furniture, Inc.*, 98 N.H. 424, 426, 101 A.2d 775, 777 (1953); 1 A. LARSON, WORKMEN'S COMPENSATION LAW § 2.40, at 10 (1978).

There was little evidence presented at trial of the defendant's earning capacity after the smoke inhalation incident. The defendant, a full-time carpenter by trade, testified that, beginning two weeks after the incident, he worked for six months as a union carpenter at the Seabrook nuclear power plant site. He left in December 1976 because the cold weather hurt his chest, and had not looked for work in the intervening eighteen months because he "didn't feel [he] was up to doing it." Dr. Petrie, on the other hand, testified that, at least by August 31, 1976, the defendant was physically able to work at any job that did not involve exposure to toxic fumes.

Upon remand, the trial court should determine the duration and extent of defendant's temporary disability resulting from the lung condition, consistent with this opinion and the relevant evidence already before it. RSA 281:25.

*Remanded.*

All concurred.