Rockingham
No. 80-104

CITY OF PORTSMOUTH & a.

v.

ROGER J. MEANEY & a.

January 21, 1981

*Devine, Millimet, Stahl & Branch,* of Manchester (*Andrew D. Dunn* orally), for New Hampshire Insurance Group.

*Sulloway, Hollis & Soden,* of Concord (*Dorothy M. Bickford* orally), for Peerless Insurance Company.

*Augustine J. McDonough,* of Manchester (*Michael B. O'Shaughnessy* orally), for Argonaut Insurance Company.

*Taylor & Gray*, of Portsmouth (*Alvin E. Taylor* orally), for Roger J. Meaney.

*Gregory H. Smith*, acting attorney general (*Jeffrey R. Cohen*, attorney, orally), for the State.

BOIS, J.   This is an appeal from a decision by the superior court as to which of three successive insurers is liable for the payment of benefits on a workmen's compensation claim. We are asked to decide whether the court erred in overruling the labor commissioner when it found that the insurance carrier at the time of the employee's subsequent retirement was liable for benefits, in dismissing a second injury claim against the special fund, and in denying attorney's fees to the claimant. We hold that the court applied an improper standard in determining coverage and reverse that part of the order, but affirm the dismissal of the second injury claim and the denial of attorney's fees.

Beginning in 1971, the plaintiff city employed the defendant-claimant, Roger J. Meaney, as a resident inspector who suffered a myocardial infarction during the course of his employment on March 13, 1974. Meaney's attending physician, Dr. Hoefle, diagnosed and treated his condition, which he related to Meaney's employment.

At the time of the heart attack, the New Hampshire Insurance Group (the Group) provided workmen's compensation coverage to the city's employees. This policy, however, terminated on July 1, 1974, when the Argonaut Insurance Company (Argonaut) began to provide similar coverage until August 4, 1975. From July 25, 1975, through July 1, 1977, the Peerless Insurance Company (Peerless) was the carrier.

Meaney testified that his doctor advised him to retire, but on September 9, 1974, he nevertheless returned to work. Soon thereafter, the department of labor conducted a hearing and found that the employment-related injury had totally disabled Meaney from May 21, 1974, to September 9, 1974. Because the Group was the carrier at the time of the initial injury, it paid the total benefits for this period.

Upon returning to work Meaney retained the same job title and rate of compensation, but took on more managerial functions while lessening the amount of physical exertion on the job. During this time he continued to suffer chest pains and shortness of breath, and Dr. Hoefle treated this discomfort as a continuation of the arteriosclerotic heart condition. Meaney stopped working on December 30, 1976, on the advice of his doctor, who had concluded

that the work-related stress had aggravated the underlying heart condition.

After a hearing, the deputy labor commissioner ruled on May 11, 1977, that the 1974 heart attack had a causal relation to Meaney's disability retirement and imposed the responsibility for the payment of benefits on the carrier at the time of the injury, the Group, which appealed this decision to the superior court under RSA 281:37. Relying on our holding in *New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 400 A.2d 1163 (1979), the Group denied any liability, specifically asserting that Meaney had suffered a stress-related subsequent injury after the effective period of its policy coverage had ended.

On January 26, 1979, Peerless notified the labor commissioner of a possible second injury claim against the second injury fund. Upon proper notice, this fund provides for reimbursement to an employer or his insurance carrier for payments made to an injured employee "subsequent to those payable for the first 104 weeks of disability" if the disability results from a second injury, the liability for which "is substantially greater by reason of the combined effects of the pre-existing impairment" and the subsequent injury. RSA 281:47-a I, VI. The superior court subsequently granted a motion by Peerless that sought to include the labor commissioner and the special fund as parties to the litigation.

After hearing the evidence, the Master (*Mayland H. Morse, Jr.,* Esq.) disagreed with the decision of the labor commissioner that there was a causal nexus between the disability retirement and the 1974 heart attack. He ruled that the physical disability of the claimant at the time of retirement in December of 1976 arose out of an accidental injury characterized as work-related stress during the second period of employment. He recommended that Peerless, the carrier at the time of Meaney's retirement, provide the required benefits. He also recommended dismissal of the special fund as a party to the action because Peerless had failed to adhere to the notice requirements of RSA 281:47-a VI.

RSA 281:23 of the State workmen's compensation law imposes a duty on an employer or his insurance carrier to compensate an employee who sustains a personal injury and is totally disabled. In RSA 281:2 V (1975) (current version at Supp. 1979) the legislature defined "personal injury" as an ". . . accidental injury or death arising out of and in the course of employment and all occupational diseases arising out of and in the course of employment. . . ." *See New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 226, 400 A.2d 1163, 1165 (1979); *Heinz v. Concord Union*

*School Dist.,* 117 N.H. 214, 217, 371 A.2d 1161, 1163 (1977). *See generally LaBonte v. Nat'l Gypsum Co.,* 110 N.H. 314, 317, 269 A.2d 634, 636 (1970); *Walter v. Hagianis,* 97 N.H. 314, 317, 87 A.2d 154, 157 (1952); 1B A. LARSON, THE LAW OF WORKMEN'S COMPENSATION §§ 42.00–42.24 (1980). "The accidental quality of a compensable injury may consist of an unexpected effect as well as an unexpected cause." *New Hampshire Supply Co. v. Steinberg supra.*

Peerless asserts that the findings of the master, whose decision stands in substitution for that of the labor commissioner, *see Charles & Nancy, Inc. v. Zessin,* 118 N.H. 556, 558, 391 A.2d 880, 882 (1978), must be overturned because they are erroneous as a matter of law. *Brown v. Mary Hitchcock Memorial Hosp.,* 117 N.H. 739, 742, 378 A.2d 1138, 1140 (1977).

Our standard of review is clearly set forth in *City of Rochester v. Smith,* 119 N.H. 495, 496, 403 A.2d 421, 422 (1979), in which we held that the "determination as to the existence of an injury . . . and the extent of the disability resulting therefrom are questions of fact that will not be disturbed if there is competent evidence in the record. . . ." *E.g., Bothwick v. State,* 119 N.H. 583, 587, 406 A.2d 462, 465 (1979).

In determining the liability of successive insurers, we begin with the rule that the responsibility of an employer for compensation of an injured employee continues for all disabilities which result from the compensable injury. *Dunbar Fuel Co. v. Cassidy,* 100 N.H. 397, 400, 128 A.2d 904, 907 (1957); 1 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 13.11 (1978); *see Zeady v. Company,* 96 N.H. 328, 331, 76 A.2d 512, 514 (1950). Absent a second separate intervening contributing cause of disability, the employer's insurance carrier on the risk at the time of the original compensable injury is liable for the employee's continuing disability. *Poole v. Statler Tissue Corp.,* 400 A.2d 1067, 1069 (Me. 1979); *Rock's Case,* 323 Mass. 428, 429–30, 82 N.E.2d 616, 618 (1948); 4 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 95.12 (1978). *But see Brown v. Hope Service Station, Inc.,* 403 A.2d 1387, 1388–89 (R.I. 1979). Work-connected overexertion and stress can provide the medical causation for compensable myocardial infarctions; and a single sudden precipitating event is not a legal requirement. The claimant, however, is not automatically entitled to relief. He "still must prove that 'the work-related stresses . . . were a causal factor in the heart attack which ensued.' . . . In other words . . . [he] had to prove both medical and legal

causation." *New Hampshire Supply Co. v. Steinberg*, 119 N.H. at 230, 400 A.2d at 1168.

The record before us indicates that the deputy labor commissioner properly applied this standard to the facts before him. His decision quoted the conclusion of Dr. Hoefle, who stated that "[i]n my opinion, . . . [Meaney's] problems of chest pain and shortness of breath have been present since his original heart attack in 1974 and are due to the same continuing medical problems which brought on his original heart attack." Accordingly, the deputy labor commissioner ordered the Group, the carrier at the time of Meaney's original injury in March of 1974, to make payments for the causally related disability which led to the December 30, 1976, retirement.

■ In discussing the medical evidence pertaining to Meaney's disability, the master stated:

"From a careful review of the medical evidence in this case, there does not appear to be a logical or systematic basis for the separation or distinction of the work-related stress effects on Mr. Meaney's hypertension and other physiological reactions. Suffice it to say, the evidence supports a finding that such symptoms were present and operative prior to Mr. Meaney's myocardial infarct in 1974. They have persisted thereafter with increasingly greater effect on him up to the time it became necessary for him to accede to his doctor's direction that he discontinue his employment at the end of December, 1976."

Because of this finding that the same continuing stress-related symptoms that led to the 1976 retirement were present and operative prior to the original heart attack in 1974, it was error for the master to have reached the conclusion that the carrier at the time of retirement was responsible for coverage. His failure to find a "second accident" warrants a finding which would comport to the standard that, absent an accidental injury or disease arising out of and in the course of his second employment, the carrier at the time of the original injury is responsible. Consequently, we agree with the order of the deputy labor commissioner on May 11, 1977, and conclude that the Group and not Peerless is liable on the claim.

Because of our reversal of the order of the master, we need not consider the issues presented by the parties regarding apportionment between insurers and the notice to the special fund.

Meaney alleges that the court erred in not awarding him attorney's fees according to the mandatory language of RSA 281:37-a (Supp. 1979). The statute provides in part: "In any dispute over the amount of benefits payable under this chapter which is appealed to the superior or supreme courts, the employee, if he prevails, shall be entitled to reasonable counsel fees as approved by the court. . . ." RSA 281:37-a I (Supp. 1979).

The Group appealed the order of the labor commissioner under RSA 281:38-a (Supp. 1979), and, in doing so, agreed that no dispute existed and that Meaney was eligible for compensation. RSA 281:38-a I (Supp. 1979) states in part: "Whenever an employee's right to compensation and/or other benefits under this act is not in dispute, either as to eligibility or amount, but a dispute arises between successive . . . insurance carriers . . . regarding liability for benefits, the commissioner . . . shall enter an order setting forth the liability . . . ."

■ Because the appeal before the master was to determine liability between successive carriers and was not to determine the already established fact that Meaney was entitled to benefits, Meaney was not a prevailing party under the terms of RSA 281:37-a (Supp. 1979), and did not fall within the mandatory language of the statute regarding the award of attorney's fees. *Cf. Bothwick v. State*, 119 N.H. at 588–89, 406 A.2d at 466. We, therefore, uphold the finding of the master regarding this issue.

*Reversed in part; affirmed in part.*

All concurred.