### Arthur D. AGUIAR

v.

### CONTROL POWER INDUSTRIES, INC.

### Joseph PEREIRA, Jr.

v.

### CONSTANTINO BROTHERS, INC. and Harold Crook d.b.a. Crook's Garage.

### Nos. 81–396 Appeal, 82–539 Appeal.

Supreme Court of Rhode Island.

July 26, 1985.

Raul L. Lovett, Lovett Morgera Scheffrin & Gallogly, Ltd., Providence, Stephen M. Rappoport, Slepkow Slepkow & Rappo-

port, East Providence, Lauren Jones, on brief, Providence, for Joseph Pereira.

Robert K. Argentieri, Carroll Kelly & Murphy, Providence, for Constantino Bros.

Bernard W. Boyer, Boyer Reynolds & DeMarco, Providence, for Constantino Bros. and Harold Crook.

## OPINION

KELLEHER, Justice.

We have consolidated these two appeals from decrees entered by an appellate division of the Workers' Compensation Commission. Both appeals represent different aspects of the continuing struggle over who is obligated to compensate an employee for a work-related disability where more than one employer or insurer is involved. The issues raised are sequels to our holding in *Brown v. Hope Service Station, Inc.*, 122 R.I. 74, 403 A.2d 1387 (1979), where we ruled that the date that will determine the responsibility of successive insurers is the date of loss of earning capacity rather than the date of injury.

The appellants now before us are Arthur D. Aguiar (Aguiar) and Constantino Brothers, Inc. (Constantino). We shall first give a brief recitation of the events that gave rise to Aguiar's appeal and then proceed to detail Constantino's plight.

Aguiar was injured on May 30, 1972, when he fell six feet into a dumpster on which he was working. Aguiar experienced pain in his lower back area for which he was treated, but he continued to work for his employer, Control Power Industries (Control Power), until April of 1974, when he was laid off. During the period between the injury and the date he was laid off, Aguiar was treated at various times for episodes of pain in his feet and leg that gradually became more severe. In March of 1975 Aguiar traveled to Portugal for a "change of climate." While there his pain intensified, necessitating an emergency laminectomy and fusion. Aguiar returned to Rhode Island in June of 1975 and became occupied in "social work" and "community organizing."

In the spring of 1976 Aguiar filed a petition seeking compensation benefits from Control Power for the injury he received when he fell onto the dumpster floor in 1972.

No one disputes Aguiar's claim on the basis of credibility. His problem stems from the fact that at the time of his loss of earning capacity in 1975 Control Power had become an insolvent self-insurer. Thus, the decision of the appellate commission awarding Aguiar compensation benefits commencing September 1, 1975, is an ephemeral victory since no company now exists from which to collect.

Understandably, Aguiar now argues not that the date-of-incapacity doctrine should be invoked here but rather that some remedy should be fashioned to allow him to collect for an unquestionably compensable injury from one of the two other insurers who were on the risk when he was either initially injured or subsequently laid off.[1]

In the other appeal before us, Joseph Pereira, Jr. (Pereira), a one-time employee of Constantino, fared somewhat better than Aguiar. Pereira, while working for Constantino, received two on-the-job injuries, one in the summer of 1976 when he fell off a payloader and another in the summer of 1979 when he fell off a truck. Pereira sustained injuries to his leg, neck, and back but suffered no loss of earning capacity during the period he was in Constantino's employ. That loss occurred later, in August 1980, when he was performing light work for Harold Crook, doing business as Crook's Garage (Crook's). There, Pereira answered the phone, changed oil, performed tuneups, and drove a truck. On October 9, 1980, Pereira filed a petition seeking compensation benefits

1. The Insurance Company of North America was Control Power's compensation carrier from October 21, 1971, to October 21, 1972, and Continental Casualty Insurance Company was then the carrier until October 26, 1974. After this time Control Power became a self-insurer.

from Constantino and Crook's for incapacity commencing August 25, 1980. In December 1980 Pereira, because of the pain he was experiencing in his neck and back, underwent disc surgery. An appellate division of the commission affirmed the trial commissioner's ruling that Constantino was responsible for payment of the benefits. The division acknowledged the premise that compensation benefits are paid for the loss of earning capacity rather than for the injury but refused to apply it to the facts before it because to have done so, in the division's words, would lead to "an absurd or unreasonable result." Constantino understandably believes that the appellate division's actions leave much to be desired.

■ The rule of law applicable in these cases at the time they were before the commission was clear. The carrier on the risk at the time the employee suffered a loss of earning capacity was obligated to compensate the employee.

As we noted earlier, *Brown* involved a dispute over benefit liability between two insurers, one of whom was on the risk when Brown was injured in May 1973 and another who was supplying coverage in June 1976 when Brown stopped working and underwent surgery.

Our conclusion that the second carrier was liable for Brown's benefits was substantially motivated by the Legislature's action, in the interim between Brown's injury and his incapacity, in increasing the benefits available to injured employees. This action resulted in the second carrier's collecting greater premiums from Brown's employer than had the first carrier. We found persuasive the argument of the first carrier that fundamental fairness required, in these circumstances, that the second insurer should bear responsibility for pay-

ment of Brown's benefits. *Brown*, 122 R.I. at 76, 403 A.2d at 1388. In taking this approach, we obviously overlooked the possibility that there might be a time when a second insurer would be seeking a premium that was less than the premium paid to the first insurer.

Our holding in *Brown* was at odds with the conclusion reached in *Santilli v. Original Bradford Soap Works, Inc.,* 85 R.I. 305, 131 A.2d 235 (1957), where the court had ruled that the carrier who was on the risk at the time of injury would be liable even though the injury did not manifest itself until eleven years later when another carrier was furnishing the coverage. The *Brown* rationale is also overshadowed by the statutory mandate in G.L. 1956 (1979 Reenactment) § 28–33–1, which, in its pertinent portion, requires the payment of compensation benefits to any employee who "receives a personal injury arising out of and in the course of his [or her] employment, connected therewith and referable thereto * * *." On reflection it is our belief that the time has come to reconsider and to discard the *Brown* rationale.[2]

■ We shall now make explicit what we believe was implicit in the 1957 holding in *Santilli.* When determining the liability of successive insurers or employers when the employee is incapacitated by an injury, we begin with the principle that the liability of an employer for compensation of an injured employee continues for all disabilities that result from the compensable injury. Absent a second separate intervening cause of disability, that is, an aggravation of the previous injury, the employer's insurance carrier on the risk at the time of the original compensable injury remains liable for the employee's continued disability. *See Poole v. Statler Tissue Corp.,* 400 A.2d

---

**2.** In *Shola v. Dworkin Construction Co.,* R.I., 474 A.2d 1252 (1984), we alluded to the extension of the *Brown* rationale to successive employers. There the employee claimed to have been incapacitated while employed by the second employer. However, a review of the record revealed that the employee actually had satisfied the statutory requirement of three consecutive days out of work while working for the first employer. *See* G.L. 1956 (1979 Reenactment) § 28–33–4. Thus, the facts of that case mandated that the first employer be held liable for the benefits. Insofar as *Shola* is inconsistent with our holding today, it is overruled.

1067 (Me.1979); *City of Portsmouth v. Meaney,* 121 N.H. 13, 426 A.2d 21 (1981); 4 Larson, *The Law of Workmen's Compensation,* § 95.12 (1984). These principles are controlling in the appeals now before us.

■ Accordingly, Aguiar's appeal is sustained, the decree appealed from is vacated, and the case is remanded to the Workers' Compensation Commission for further proceedings that conform to this opinion.

Constantino's appeal is denied and dismissed, the decree appealed from is affirmed, and the record is remanded to the Workers' Compensation Commission.