Loretta DiMASCIO

v.

CREST CRAFT, INC.

No. 92–361–M.P.

Supreme Court of Rhode Island.

June 17, 1993.

John A. Toro and John Harnett, Providence, for plaintiff.

Steven B. Merolla and Vincent F. Kane (Asquith, Merolla, Anderson, Archetto & Kane), Robert E. Hardman (Carroll, Kelly & Murphy), Providence, for defendant.

## OPINION

SHEA, Justice.

This matter was heard before the Supreme Court following our grant of the employee's petition for the issuance of a writ of certiorari. In this case the trial judge of the Workers' Compensation Court had decided that the employee, Loretta DiMascio (DiMascio), had suffered a recurrence of an old injury rather than an aggravation or a new injury. The Workers' Compensation Appellate Division affirmed. We quash the decree of the Appellate Division and remand for entry of new decrees consistent with our opinion.

The employee had filed two petitions at the Workers' Compensation Court.[1] One was a petition to review a prior injury, in which she alleged that she suffered a return of incapacity in March of 1988 arising out of an occupational injury she suffered in 1982. That injury was to the right thumb.

The second petition is an original petition in which employee alleged an injury to her left wrist and left index finger described as carpal tunnel syndrome, which injury occurred because of the constant repetitive motions involved in her work as a products packager for employer, Crest Craft, Inc. In that petition she alleged disability beginning March 25, 1988.

The two petitions were consolidated for hearing before a single judge. In order for us to reach a conclusion in this case, it was necessary that we carefully examine all the medical evidence presented.

The employee testified that she had worked for employer for twenty-four years. She worked as a packager, using her arms and hands in repetitive motions most of the day. She was able to assemble as many as one hundred boxes in an hour. On March 23, 1988, she was unable to work and reported to her supervisors that she had had pain in her arms and hands since 1982. She had undergone treatment with

Dr. Stanley Stutz from 1982 until he referred her to Dr. Peter A. Pizzarello in 1988. She received workers' compensation benefits after Dr. Stutz performed an operation on her right thumb in 1982. Following her return to work she continued to have pain in both hands and in time received treatment to all her fingers. That treatment consisted of injections of cortisone and other medications into the fingers for pain. The pain and stiffness in her fingers and hands grew progressively worse over the years.

Doctor Stutz testified that he had treated DiMascio for various ailments, beginning in 1977. In 1982 he saw her several times for complaints of soreness in the left elbow and left shoulder. In October 1982 he treated her for "clicking" and pain in her right thumb. He performed surgery, which was a release of the proximal pulley of the right thumb, on November 30, 1982. It was after this surgery that employee first received workers' compensation benefits pursuant to the agreement under review.

In 1986 Dr. Stutz saw employee for tenderness of the left index finger. He gave injections of a local anesthetic and a steroid, in combination, to the index and third fingers of the left hand. Later visits revealed complaints of aching in both arms and a diagnosis of degenerative arthritis in her hands and tingling and numbness in her left hand. He diagnosed carpal tunnel syndrome in April 1986.

Doctor Stutz testified regarding his findings during a March 30, 1988 visit, describing employee as experiencing:

"[a]ching in the left forearm. She had no recent history of trauma other than she was doing packaging. She had point tenderness over the lateral epicondyle. She had some clicking of the left index finger. Again diagnosis lateral epicondylitis. She is locally injected and at that time I'd see her back in two or three

---

1. Between the employee's first disability in 1982 and her second disability in 1988 there was a change of insurers by employer. No preliminary or suspension agreement between employer and employee in 1982 was produced at the trial. Compensation benefits were nevertheless paid, for the 1982 disability.

weeks and she was disabled as to her job." [2]

He concluded that the problems with her left fingers, hand, and arm were "[e]ither caused or aggravated" by her work. In his opinion the cause of both her 1982 and her 1988 medical problems was her work. He specifically stated that there was no causal relationship between the two injuries or conditions. The examinations and tests that he had ordered revealed that employee suffered from carpal tunnel syndrome in both her left and her right wrists.

Doctor Pizzarello testified that after DiMascio was referred to him by Dr. Stutz, he performed carpal-tunnel-release surgery and a left index-trigger-finger release surgery on employee on July 31, 1989. He also said he was certain that the carpal tunnel syndrome was work related. When asked whether there was a causal connection between the 1982 and the 1988 medical conditions, he replied:

> "[My] opinion is [the] left carpal tunnel is an aggravation of pre-existing hand problems while at work and the carpal tunnel of [19]88 is an aggravation.
> " * * *
> "The left hand, the hand operated on, is an aggravation in not the legal sense but an exacerbation of prior problems * * *. The unoperated side, the right side is a new injury."

On cross-examination Dr. Pizzarello indicated that the carpal tunnel syndrome had nothing to do with the right thumb. He also said that employee had "trigger finger" in a number of fingers on both hands but that "trigger fingers" and carpal tunnel syndrome are not related.

The employer did not offer any independent medical evidence to contradict the testimony of employee's treating physicians. There was no evidence to impeach employee's account of her medical history. "[A] judge * * * may not reject uncontradicted testimony arbitrarily." *Hughes v. Saco Casting Co.*, 443 A.2d 1264, 1266 (R.I. 1982). The trial judge in fact did rely on the testimony of employee's attending physicians. Nowhere in his decision did he

state that there were any inherent improbabilities in this evidence. Yet the trial judge found that employee's 1988 disability that was due to carpal tunnel syndrome on the left arm and hand was a recurrence of the 1982 injury to the right hand. He granted employee's petition to review and denied the original petition. The Appellate Division affirmed.

█ It is well settled that our review in these cases is limited to an examination of the record to determine whether any legally competent evidence exists to support the finding of the trial judge. *Worcester Textile v. McIntosh*, 593 A.2d 70 (R.I.1991); *Villa v. Eastern Wire Products Co.*, 554 A.2d 644 (R.I.1989).

In discussing the difference between "recurrence" and "aggravation," we have said:

> " 'A recurrence is the reappearance of a work-related injury. * * * The employee, however, need not identify any precipitating factors, either work related or nonwork related, as the reason for the recurrence.' *Mignone v. Shapewood Design, Inc.*, 525 A.2d 1297, 1300 (R.I.1987). This court has identified two types of aggravation that are compensable. [O]ne type of aggravation occurs when an employee sustains an employment-related injury that is aggravated by surgical or medical treatment. * * * The second type of aggravation occurs when an 'employee is suffering from a preexisting disease or infirmity, that the employment aggravates or accelerates to produce a disability.' * * * This type of aggravation requires 'a second separate intervening cause' for the disability. *Aguiar v. Control Power Industries, Inc.*, 496 A.2d 147, 149 (R.I.1985). However, the employee need not show that the original injury arose out of or in the course of his or her employment." *Lisi v. Warren Oil Co.*, 601 A.2d 956, 959 (R.I.1992.)

█ Although the symptoms began to appear at about the time employee was operated on for the right thumb release, the medical evidence seems to be undisputed that employee's left wrist problems did

---

**2.** Epicondylitis is a painful and sometimes disabling inflammation of the muscle and surrounding tissues of the elbow, caused by repeated strain on the forearm.

not flow from the 1982 right thumb problem. Both physicians testified that her left wrist problems resulted from the long-term repetitive nature of her work. The medical evidence is clear that the carpal tunnel syndrome was found in both wrists, both obviously resulting from her work as a packer. The trial judge recognized that the carpal tunnel syndrome "resulted from the continuous and repetitive use of the arm in the work place." This continuous and repetitive use of the arm produced an aggravation, a new injury, the left carpal tunnel syndrome that became disabling in 1988. It was a new injury, not a recurrence. It was the second type of aggravation referred to in *Lisi.*

We acknowledge that the physicians' use of the words "aggravation" and "new injury" and "recurrence" was confusing. From the evidence, however, there can be no question that the employee's carpal tunnel syndrome is causally related to her work. The only issue was whether her March 1988 disability was a recurrence or a reappearance of the 1982 medical condition that caused disability. On the basis of the medical testimony and the trial judge's ruling that "the carpal tunnel syndrome was caused by the repetitive use of the hand" in the work place, we conclude that what was disabling the employee at the time these petitions were heard was a new injury, an aggravation of a preexisting work-related condition, for which employee was entitled to compensation benefits at the rate prevailing when the disability began.

For these reasons the employee's petitions for certiorari are granted, and the decrees appealed from are quashed. The papers of this case are remanded to the Workers' Compensation Court with our opinion endorsed thereon for entry of new decrees, one denying the petition to review, the other granting the original petition and awarding compensation benefits at the rate prevailing at the time disability began in 1988.

LEDERBERG, J., did not participate.