Merrimack,
No. 4508.

GAYLE P. BENTLEY, *by her father and next friend & a.*

*v.*

EDWARD B. ADAMS.

Argued November 7, 1956.
Decided December 31, 1956.

*George P. Cofran* and *Paul A. Rinden* (*Mr. Rinden* orally), for the plaintiff.

*Upton, Sanders & Upton* and *Wesley E. Whitney* (*Mr. Whitney* orally), for the defendant.

BLANDIN, J.  In seeking a new trial the defendant relies mainly upon the Court's failure to instruct the jury that there was no evidence that the accident caused difficulties in the plaintiff Gayle's speech, "dizziness," "menstrual difficulties," "tantrums or crying spells," or "shaking or tremor" of her hands.  There was evidence from lay witnesses from which the jury could find the following. The plaintiff was a normal, healthy eighteen-year-old girl before the accident who was jolly and sociable, liked people and was "a lot of fun to be with."  Immediately after the collision she was "stunned and dazed" and had a bump on her forehead as large as "a regular goose egg."  Her eyes were black and the discoloration extended "way down onto her face."  The discoloration remained a week or ten days.  After the accident she complained of constant headaches and these lasted until she was relieved by treatment from Dr. Maxfield.  Following the accident she became easily upset and would "burst into tears and fly into a tantrum" on slight provocation.  As one witness described it, she would "just blow up" for no reason at all.  "She seemed entirely different." She complained among other things of "dizziness" and "her hands used to tremble."  Some two months after she was injured, she began to have trouble with her menstrual periods.  Notwithstanding treatment by several physicians, she did not improve until she went to Dr. Maxfield on October 25, 1954, and under his care she finally recovered and was discharged completely cured on March 21, 1955.  This physician testified that the accident displaced a vertebra in her neck, gave her "constant headaches,"

"emotional disturbances" and "general nervousness and emotional strain." Her case history introduced through the doctor by the defendant showed that after her injury she was an "antisocial introvert" who "dislikes people in general" and that there had been a "character change since the accident."

In order that verdicts may not be founded on speculation, it is essential to establish causal connection between an accident and subsequent complaints either by expert testimony, by inferences which may fairly be drawn from lay testimony or by a combination of the two. Obviously medical testimony is sometimes unnecessary because the matters involved fall within the realm of common knowledge. *Mehigan* v. *Sheehan,* 94 N. H. 274, 275, 276. See Maguire Evidence, Common Sense and Common Law, *p.* 30. There are other situations where the questions are such that only an expert may be expected to know about them, and in such cases expert testimony is required. *Beane* v. *Perley,* 99 N. H. 309; *April* v. *Peront,* 88 N. H. 309. Applying these principles to the facts of this case, it seems to us that the jury relying upon the expert medical testimony introduced and drawing such inferences from it and the lay witnesses' evidence "as are justified by the common experience and observations of mankind" (*Richards* v. *Rizzi,* 99 N. H. 327, 328; *Dunham* v. *Stone,* 96 N. H. 138, 140) could find that the plaintiff suffered from "tantrums or crying spells" and "dizziness" as a result of the accident. Unquestionably they could also believe a character change, irritability and emotional instability were attributable to her injury. The evidence taken as a whole plus the fact that no other cause was shown to account for these symptoms which first appeared after the accident seem to us a reasonable basis for such a conclusion. *Lamontagne* v. *Lamontagne,* 100 N. H. 237.

However, we do not believe it can fairly be said that speech difficulties, tremor of the hands and menstrual troubles, the latter first appearing two months after the accident, are complaints of which the layman's unaided knowledge is adequate to enable him to say they were caused by the accident. Nor do we believe that the testimony of the physician in this case which related only to headaches, general nervousness, emotional disturbances, and personality changes as effects of the accident was sufficiently specific or inclusive to connect the tremor, menstrual troubles or the plaintiff's speech difficulty with the accident. If the injury caused these symptoms, no reason appears why the physician could not

**380**

have said so. It follows that these matters should not have been submitted to the jury and the defendant's exceptions must be sustained.

This appears to dispose of all exceptions of merit and the order is

*New trials.*

All concurred.