404 S.E.2d 537

**Anna Louise FARLEY and Arliss Farley**

v.

**Owen C. MEADOWS, M.D.**

**No. 19706.**

Supreme Court of Appeals of West Virginia.

April 22, 1991.

---

David Burton, Brewster, Burton, Morhous & Cameron, Princeton, for Anna Louise Farley and Arliss Farley.

Michael Bonasso, Kay, Casto, Chaney, Love & Wise, Charleston, for Owen C. Meadows, M.D.

NEELY, Justice:

On 20 February 1986, Anna Louise Farley (Ms. Farley) had a tubal ligation performed by Owen C. Meadows, M.D. (Dr. Meadows). The procedure used involved the placing of "silastic bands" on the left and right fallopian tubes to prevent eggs from passing from the ovaries to the uterus.

Before the operation, Ms. Farley was informed of the risks involved in the operation, including the risk that it could fail to

prevent pregnancy. Specifically, she was informed that, "[v]ery rarely, tubal banding fails to prevent the woman from becoming pregnant. Your doctor cannot guarantee that this procedure will be successful in preventing future pregnancy even though failures from this type of birth control are very rare." ("Procedure: Laparoscopy" form, Farley Deposition Exhibit No. 1.) Ms. Farley and her husband also signed a "Consent and Request for Sterilization" form, which informed them that "... there is no guarantee that the operation will render Anna Farley absolutely or permanently sterile, oral assurances notwithstanding." On the consent form, Dr. Meadows wrote, "failure one in 300", when he filled out the form and handed it to Mr. and Ms. Farley to sign.

On 8 July 1986, Ms. Farley returned to Dr. Meadows, and he determined that she was pregnant. Ms. Farley decided to have another tubal ligation that would immediately follow the delivery of her child by Cesarean section.[1] On 19 February 1987, Ms. Farley gave birth to a normal healthy baby boy by Cesarean. Dr. M.T. Webb, assisted by Dr. David Foster, performed the operation.[2]

After the baby was delivered, and blood and fluid were cleaned from Ms. Farley's abdomen, Dr. Webb examined her left and right fallopian tubes. Dr. Webb noted that a silastic band was in place on the left fallopian tube, but that the right fallopian tube appeared normal. In his operative report, he stated that he presumed the silastic band had slipped off the right tube soon after the previous application. He did not conduct a thorough search of Ms. Farley's abdomen for the other silastic band, because a silastic band "is inert and would not cause her to have any problems." (Webb Deposition, p. 21–22.)

On 3 December 1987, Ms. Farley, with her husband, brought a medical malpractice action in the Circuit Court of Raleigh County against Dr. Meadows alleging that Doctor Meadows failed properly to perform

---

1. Ms. Farley had already undergone two deliveries by Cesarean section.

2. Both Dr. Webb and Dr. Foster are associates of Dr. Meadows.

the tubal ligation. Ms. Farley wanted to try the case as a *res ipsa loquitur* case, but the circuit court ruled on 6 January 1989 that Ms. Farley would have to prove negligence by expert testimony, and gave her 120 days to obtain an expert. In over 120 days, Ms. Farley could not find an expert willing to testify. In a nutshell, plaintiff maintains that: (1) a child was born, which demonstrates that the band was not in place; (2) the doctors did not find the band in the course of delivering the child; and (3) x-ray evidence would disclose that there is no band visible on an x-ray indicating that the band is still inside the plaintiff.

When it was determined that Ms. Farley would present no expert testimony, the circuit court granted summary judgment in favor of Dr. Meadows. Ms. Farley appealed the granting of summary judgment, claiming that this is a *res ipsa loquitur* case.

### I.

■ This is not a *res ipsa loquitur* case. In Syl. Pt. 5, *Davidson's, Inc. v. Scott,* 149 W.Va. 470, 140 S.E.2d 807 (1965), we said:

> The doctrine of *res ipsa loquitur* cannot be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances are not proved, but must themselves be presumed, or when it may be inferred that there was no negligence on the part of the defendant. The doctrine applies only in cases where defendant's negligence is the only inference that can reasonably and legitimately be drawn from the circumstances.

When a surgical sponge or scalpel shows up in the chest of a veteran of open heart surgery, the only inference that can be drawn is that the foreign object was left in the chest from the surgery. *Res ipsa loquitur.* However, the *absence* of the small silastic band from where it was supposed to be is not the same as the *presence* of the

surgical instrument left where it is not supposed to be. We certainly cannot determine that the band was never placed in Ms. Farley's abdomen, because Drs. Webb and Foster properly refrained from conducting an unnecessary and highly injurious search for it in Ms. Farley's abdomen, and may have even washed the band out with the blood and fluid after the delivery.

Likewise, we cannot conclude that the band was applied improperly to the tube. It is entirely possible that Dr. Meadows performed the operation flawlessly, but that the band came off naturally. Dr. Foster testified that, "conceivably any type of tension on the tube could just pop the band off almost like a rubber band coming off," and indicated that if the band came off a short time after it was applied, the tube would not reveal residual evidence that the band was ever applied. (Foster Deposition, p. 24.)

■ Thus, it would be entirely reasonable to infer that the band was correctly applied to Ms. Farley's right fallopian tube, but that it came off soon thereafter—that Ms. Farley was the one out of every three hundred patients for whom the sterilization procedure was destined to fail. Clearly, then, that Dr. Meadows negligently performed the tubal ligation is not the only inference we can draw from the facts. Thus, the doctrine of *res ipsa loquitur* cannot apply to this case. *Davidson's, Inc. v. Scott, supra.*[3] Consequently, Ms. Farley needed to prove medical malpractice by means of expert medical testimony. In Syl. Pt. 2, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964), we said:

> It is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.

Ms. Farley had ample time to retain an expert, and failed to do so. She claims that there is a "conspiracy of silence" among medical professionals, and, of course, there is an understandable reluctance among doc-

---

**3.** Further, the record shows that whether Dr. Meadows acted negligently involves matters outside the "common knowledge" of jurors. *See,*

*Totten v. Adongay,* 175 W.Va. 634, 337 S.E.2d 2 (1985).

tors to testify against fellow doctors with whom they must work every day. However, it is obvious from the abundance of medical malpractice cases that go to trial around the United States, and from the profusion of medical experts advertising their services in the back of legal magazines, that many doctors will gladly don their boxing gloves for a reasonable fee and testify about malpractice matters away from their own home towns.

Accordingly, for the reasons stated above, the summary judgment granted by the Circuit Court of Raleigh County is affirmed.

Affirmed.