Merrimack
No. 92-522

LAWRENCE DUROCHER, JR.

v.

ROCHESTER EQUINE CLINIC & a.

August 10, 1993

*Frank H. Gordon*, of New London, by brief and orally, for the plaintiff.

*Ouellette, Hallisey, Dibble and Tanguay, P.A.*, of Dover (*Dennis L. Hallisey* and *Thomas G. Ferrini* on the brief, and *Mr. Hallisey* orally), for the defendants.

BROCK, C.J.   The plaintiff appeals the dismissal of his negligence action alleging veterinarian negligence. The Superior Court (*O'Neill,* J.) dismissed the action for failure to designate an expert medical witness to prove that the plaintiff's horse was permanently injured, and that the defendants' negligence caused such injury. For reasons that follow, we vacate and remand.

On September 27, 1988, two race horses were transported from Rockingham Park to defendant Rochester Equine Clinic. One horse, a black stallion, was sent to the clinic by Robert Wattie, D.V.M. for treatment and removal of chips in his left front fetlock and right front carpal joints. The other horse, a black mare owned by the plaintiff, was sent to the clinic by Dr. Wattie for diagnosis concerning hind end lameness, caused by a trailer mishap on a trip from Florida.

The plaintiff alleges that on September 30, 1988, defendant Grant Myhre, D.V.M. operated on the mare, believing that she was the stallion, to remove an ankle chip in the right front fetlock, despite an earlier warning by the referring veterinarian that there may be some mistake. The plaintiff sued for negligence and gross negligence. He alleges that before entering the defendant clinic, the mare had no problems with her legs, despite the trailer mishap, but that after the operation, the mare was no longer able to train as a race horse. The defendants propounded expert interrogatories, and the plaintiff answered by stating that there were no expert witnesses available to testify regarding the veterinarian malpractice claim at

issue. The defendants moved to dismiss, arguing that the plaintiff could not meet his burden of proof in the absence of expert testimony as required by RSA 507-E:2 (Supp. 1992).

The superior court held that expert medical testimony was not necessary to prove defendant Myhre's negligence in confusing the mare and the stallion because "'the matters involved fall within the realm of common knowledge.' *Bentley v. Adams*, 100 N.H. 377, 379 [, 128 A.2d 202, 204] (1956)." The court granted the motion, however, because "on the issue of causation and damages, '[t]he general rule in medical malpractice cases is that the *proximate cause* between the negligence and the injury must be established through expert testimony.' *Thorpe v. State*, 133 N.H. 299, 304[, 575 A.2d 351, 353] (1990) (emphasis added)." The superior court did not state whether the requirement of expert testimony in medical malpractice cases under RSA 507-E:2 (Supp. 1992) applies to malpractice actions involving animals. The plaintiff moved to reconsider, arguing that RSA 507-E:2 (Supp. 1992) should not apply, but requesting that if the court nonetheless required expert testimony that he be given the opportunity to present a veterinarian expert. The superior court denied the motion. The plaintiff appeals from the order of dismissal and the denial of the motion for reconsideration.

■ We agree that no medical expert testimony was necessary to determine whether Dr. Myhre was negligent in operating on the wrong animal. "Where the matter is regarded as within the common knowledge of laymen, as where the surgeon saws off the wrong leg, or there is injury to a part of the body not within the operative field, it is often held that the jury may infer negligence without the aid of any expert." W.P. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 32, at 189 (5th ed. 1984); *see Bentley v. Adams*, 100 N.H. at 379, 128 A.2d at 204. Based on common knowledge, jurors may determine that performing the wrong operation on a horse constitutes negligence on the part of the veterinarian.

■ We next consider whether RSA 507-E:2 (Supp. 1992) applies to negligence actions against veterinarians. A plain reading of RSA 507-E:2 (Supp. 1992) reveals that the statute is applicable to injured persons, not injured animals. It provides that

> [i]n any action for medical injury, the plaintiff shall have the burden of proving by affirmative evidence which must include expert testimony . . . : (a) The standard of reasonable professional practice in the medical care provider's profession . . . ; and (b) That the medical care provider failed to act

in accordance with such standard; and (c) That as a proximate result thereof, the injured *person* suffered injuries which would not otherwise have occurred."

RSA 507-E:2, I (Supp. 1992) (emphasis added). It would be disingenuous to interpret the word "person," as the defendants suggest, as the owner of an animal. Accordingly, we conclude that the statute does not apply.

■ Nonetheless, we adopt the reasoning of the Montana Supreme Court that "[m]atters concerning the standard of care owed by a veterinarian during and after surgery are outside the common experience and knowledge of lay jurors; expert testimony is necessary to assist [the jurors] in resolving such cases." *Zimmerman v. Robertson*, 854 P.2d 338, 340 (Mont. 1993). Moreover, expert testimony by a veterinarian is necessary on the issue of whether the surgery actually *caused* the purported injury. *See* Annotation, *Veterinarian's Liability for Malpractice*, 71 A.L.R. 4TH 811, 824–25 (1989). Contrary to the plaintiff's suggestion, we believe that a horse trainer simply cannot be qualified as an expert to interpret x-rays and medical records to assess the causation of any purported injuries. A trainer may, however, testify as to the agility of a horse prior to and after a specific time.

■ In this case, jurors could determine without the assistance of expert testimony whether Dr. Myhre breached a duty of due care by performing the wrong surgery on the horse. What is not so easily decided, however, is whether the mare's alleged injury was caused by the operation, or even if the mare suffered an injury. The plaintiff argues that testimony from the trainers is sufficient to prove that the mare has a permanent injury, and that the injury was caused by the operation. We believe that expert testimony from a veterinarian is necessary to prove the elements of causation and harm in this tort action. *Cf. Thorpe v. State*, 133 N.H. at 304, 575 A.2d at 353 ("The general rule in medical malpractice cases is that the proximate cause between the negligence and the injury must be established through expert testimony."). The type of knowledge needed to determine the cause of injuries based on medical malpractice, whether committed by a medical doctor or a veterinarian, is generally outside of the realm of jurors' common knowledge.

The plaintiff argues that even if expert medical testimony is generally required, it would be unhelpful in this case because the defendants may have altered the records. The alteration of records would not necessarily preclude an expert from independently exam-

ining the horse, and determining the existence and causation of any ailments. Regardless of the condition of the records, the determination of causation of injury in this case is outside the common knowledge of jurors. Thus, the jury should be aided, for example, in its understanding of the nature of the surgery to the right front fetlock, and whether such surgery could have caused the mare's purported lameness.

This case provides us with our first opportunity to articulate the law in this jurisdiction regarding the need for expert witnesses in veterinarian malpractice cases, and thus, the plaintiff should not be precluded from an opportunity to comply with the rule. Although the plaintiff continued to challenge the need for an expert, he did inform the superior court upon reconsideration that he would designate an expert veterinarian witness in order for the case to be rescheduled for trial. We believe that this is a reasonable request. The plaintiff should be afforded the opportunity to proceed with his case in accordance with the requirements set forth in this opinion.

Finally, the plaintiff argues that the doctrine of *res ipsa loquitur* should apply. *Res ipsa loquitur* "is merely a rule identifying the elements of circumstantial evidence that are sufficient to get a plaintiff's case to the jury and allow the jury to return a plaintiff's verdict." *Cowan v. Tyrolean Ski Area, Inc.*, 127 N.H. 397, 400, 506 A.2d 690, 692 (1985). As stated above, proper expert testimony is necessary here to prove causation of the purported harm. Because no such testimony has yet been heard in this case, we do not reach the issue of whether the doctrine of *res ipsa loquitur* is applicable. *See id.*

*Vacated and remanded.*

All concurred.