A03A1433. OAKES et al. v. MAGAT et al.
(587 SE2d 150)

ELDRIDGE, Judge.

Appellants-plaintiffs, John H. Oakes and April R. Oakes, appeal from the grant of summary judgment to appellees-defendants, Wilfrido Matinez Magat, M.D., Snellville Anesthesia Services, and John Does I-V (collectively "Dr. Magat"), in this medical malpractice/loss of consortium action. The record shows that Mr. Oakes underwent outpatient surgery for the removal of two benign breast masses on August 21, 1998. Dr. Magat of Snellville Anesthesia Services administered general anesthesia in support of the procedure. Nearly a year later, Mr. Oakes was diagnosed as having lost the functional use of his right lung — this diagnosed as for phrenic nerve paralysis.

By their complaint for damages, filed on August 18, 2000, under OCGA § 9-11-9.1 (b), the Oakeses alleged medical malpractice against Dr. Magat for injuring Mr. Oakes's phrenic nerve with attendant loss of lung function due to the elongation of his neck in order to anesthetize him by intubation.[1] Dr. Magat timely answered, denying the material allegations of the complaint. Mr. Oakes filed the affidavit of his expert approximately three months later.[2] Dr. Magat moved for summary judgment on February 6, 2002, asserting that the Oakeses had failed to present any evidence showing profes-

---

[1] Unrebutted evidence on motion for summary judgment showed that Mr. Oakes had not been anesthetized by "intubation" and that his neck had not been elongated. See Division 1, infra.

[2] The superior court granted the Oakeses time to file beyond the 45-day delay here authorized them under OCGA § 9-11-9.1 (b) upon duly alleging the running of the statute of limitation within ten days of filing their complaint and that an expert affidavit showing professional negligence could not be timely prepared.

sional negligence or proximate causation. On November 18, 2002, following a hearing on the motion, the superior court granted Dr. Magat summary judgment, finding no "medical testimony on the basis of which a jury could find that [Dr. Magat] (1) violated the standard of care or (2) caused Mr. Oakes any injury[ ]" in that "the [Oakeses] had not contradicted Dr. Magat's affidavit with testimony of a competent medical expert." The Oakeses appeal, and finding no error, we affirm. *Held*:

1. The Oakeses challenge summary judgment for Dr. Magat, contending that his affidavit in support thereof was based on medical records outside the record contrary to OCGA § 9-11-56 (e). We disagree.

The Oakeses' claim to the contrary notwithstanding, the record shows that Dr. Magat properly attached to his affidavit a certified copy of the medical record to which he referred in his affidavit. See OCGA § 9-11-56 (e) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."). Thereafter, Dr. Magat made the affidavit and its attachments, the medical record in issue and his curriculum vitae, a part of the record, contemporaneously filing these in support of his motion for summary judgment. The superior court later held its hearing on the motion and in due course entered its order thereon.

Even were the foregoing not the case, it is clear that affiant Magat made his affidavit upon personal knowledge, and, rather than relying on the complained-of medical record in reaching his conclusions, merely concurred in the possible causes of Mr. Oakes's injuries as these were expressed in such record as a doctor and expert witness.

Dr. Magat's affidavit states in pertinent part:

> This affidavit is based on my personal knowledge and facts available to me in connection with my role as [Mr. Oakes's] anesthesiologist during surgery performed on [him] on August 21, 1998. . . . [Mr. Oakes] was not intubated during the August 21, 1998, surgery. To the contrary, as the anesthesia record plainly states, the airway used was a laryngeal mask airway ("LMA"), which does not involve intubation. . . . The installation of the LMA in this case did not involve elongating the neck and did not involve placing pressure or traction on the neck. . . . The installation and management of the LMA was done in compliance with that degree of care and skill generally exercised by members of the medical profession under the same or similar circumstances. . . . I am aware of no medical literature or case reports indicating that injury to the phrenic nerve by use of a LMA ever has occurred or even is possible. . . . If a

phrenic nerve injury causing diaphragm paralysis had occurred during the August 21, 1998, surgery, signs and symptoms of the injury would have appeared almost immediately upon [Mr. Oakes's] regaining consciousness from anesthesia. As the medical records confirm, [Mr. Oakes] exhibited no signs or symptoms indicative of a phrenic nerve injury after the procedure and reported upon inquiry the next day that he had no physical problems. . . . Phrenic nerve injuries have many potential causes, including trauma and disease. I agree with the following passage from the certified medical records of F. Hugh Jenkins, M.D., [Mr. Oakes's] treating pulmonary medicine specialist, which lists several possible causes for any phrenic nerve injury [Mr. Oakes] may have[.] [Specifically,] [i]n terms of possible inciting ideologies for this, [Mr. Oakes] recalls having had a severe cold back in November and December of last year with a pain in his chest and congestion. He has had no recent trauma, though he played football and said he got knocked pretty hard playing football as well as being in a car wreck several years ago in which he was struck from behind. He also reports several hard falls with his machine, that is, with his heavy equipment.

In opposition to the foregoing, the Oakeses filed the affidavit of a Virginia physician whose conclusions, among them that Mr. Oakes had been anesthetized by intubation and upon the elongation of his neck, were based on medical records not attached to the affidavit and not otherwise in the record. As such, the affidavit of the Oakeses' expert witness in opposition to summary judgment was inadmissible. OCGA § 9-11-56 (e); *Estate of Patterson v. Fulton-DeKalb Hosp. Auth.*, 233 Ga. App. 706, 707 (1) (505 SE2d 232) (1998). Under these circumstances, summary judgment for Dr. Magat was proper.

2. Finally, the Oakeses contend that the doctrine of res ipsa loquitur should be relied on to carry this case to a jury and urge that we overrule any conflicting precedent. This we decline to do.

Georgia courts have expressly ruled . . . that the doctrine of res ipsa loquitur does not apply in a malpractice suit. An unintended result does not raise an inference of negligence. *Howell v. Jackson*, 65 Ga. App. 422, 423 [(16 SE2d 45) (1941)]. It is presumed that medical or surgical services were performed in an ordinarily skillful manner. *Shea v. Phillips*, 213 Ga. 269 (2) [(98 SE2d 552) (1957)].

*Hayes v. Brown*, 108 Ga. App. 360, 367 (3) (133 SE2d 102) (1963). See also *Wimpy v. Rogers*, 58 Ga. App. 67, 69 (197 SE 656) (1938) (res

ipsa loquitur inapplicable in medical malpractice action). Accordingly, this enumeration of error is likewise without merit.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED AUGUST 26, 2003 —
RECONSIDERATION DENIED SEPTEMBER 11, 2003 —

*Donald W. Johnson*, for appellants.

*Love, Willingham, Peters, Gilleland & Monyak, Robert P. Monyak, Anna B. Fretwell*, for appellees.