**Janice SIDES, et al., Appellants,**

v.

**ST. ANTHONY'S MEDICAL CENTER, et al., Respondents.**

No. SC 88948.

Supreme Court of Missouri, En Banc.

Aug. 5, 2008.

Matthew D. Meyerkord, Steven F. Meyerkord, Steven D. Rineberg, Meyerkord, Rineberg & Graham, LLC, St. Louis, for Appellants

V. Scott Williams, Douglas B. Ponder, Hazelwood & Weber LLC, St. Charles, Donald R. Carmody, Johm E. Hilton, William J. Magrath, Carmody MacDonald P.C., St. Louis, for Respondents.

Leland F. Dempsey, Dempsey & Kingsland, Kansas City, for Amicus Curiae Missouri Association of Trial Attorneys.

Harvey M. Tettlebaum, Robert L. Hess, II, R. Ryan Harding, Husch Blackwell Sanders LLP, Jefferson City, for Amicus Curiae Missouri State Medical Association, Missouri Pharmacy Association, Missouri

Health Care Association, and Missouri Dental Association.

LAURA DENVIR STITH, Chief Justice.

This case presents the question whether expert testimony may be offered in medical malpractice cases to support a claim brought under the theory of *res ipsa loquitur*. The trial court ruled that under this Court's opinion in *Hasemeier v. Smith*, 361 S.W.2d 697 (Mo. banc 1962), an expert witness is not permitted to testify in a *res ipsa loquitur* case. This means, it concluded, that since medical testimony is required in a case such as this involving the cause of an infection at the surgical site following a back operation, the action could not be brought on a *res ipsa loquitur* theory. It therefore granted defendants' motions to dismiss.

This Court reverses and remands. The *Hasemeier* plaintiff did not attempt to introduce expert testimony under a *res ipsa loquitur* theory. Rather, that plaintiff sought to avoid use of a medical expert by substituting an inference based on *res ipsa loquitur* for a medical opinion of negligence. This Court simply held that a plaintiff in a medical malpractice case must present medical expert testimony as to negligence unless the case fits within one of the two narrow exceptions traditionally recognized to the rule requiring expert testimony. Plaintiff could not avoid this requirement simply by pleading a *res ipsa loquitur* theory. Those court of appeals cases that have interpreted *Hasemeier* more broadly are, to that extent, overruled.

■ This case presents an issue of first impression to this Court, as to whether this Court should adopt the position set out in Restatement (Second) of Torts Section 328D, comment d (1965), that a plaintiff in a medical malpractice case can proceed on a *res ipsa loquitur* theory where the plaintiff offers a medical expert's opinion that the injury would not have occurred in the absence of negligence by defendant. This Court joins with the 28 out of 36 other jurisdictions that have considered this question and answered in the affirmative.

## I.  FACTUAL BACKGROUND

Janice Sides had a lumbar laminectomy with spinal fusion on June 17, 2003, at respondent St. Anthony's Medical Center. Her surgeon was respondent Thomas K. Lee, M.D., who was employed by respondent Tesson Heights Orthopedic and Arthroscopic Associates, P.C. Mrs. Sides was discharged from St. Anthony's three days later. She and her husband, Clyde Sides, filed suit in June 2005 against St. Anthony's, Dr. Lee and Tesson Heights, alleging that she was infected by Escherichia coli bacteria (more commonly referred to as E. coli) during the surgery. In this and her first two amended petitions, plaintiffs alleged that the infection was caused by one of various failures to take standard operative infection precautions before, during and after the operation or perforation of Mrs. Sides's bowel.

In their third amended petition, plaintiffs alleged a *res ipsa loquitur* theory against defendants on the basis that an infection in the surgical site itself, such as that experienced by Mrs. Sides, does not occur in the absence of negligence. They alleged that when Dr. Lee performed the surgery he was assisted by "agents, servants and employees of defendant St. Anthony's" and that all of the equipment and materials used in the surgery were prepared by St. Anthony's. Plaintiffs further alleged that Mrs. Sides was unconscious due to anesthesia given to her at the time of the surgery, that her body and the surgical site were under the exclusive and

joint control of defendants, that defendants had greater knowledge of the possible causes of the infection, and that the three defendants "infected plaintiff Janice F. Sides' body at the site of the surgery" with E. coli.

Defendants moved to dismiss, alleging that under this Court's opinion in *Hasemeier* and the opinion in *Spears v. Capital Region Med. Ctr., Inc.*, 86 S.W.3d 58, 61–62 (Mo.App. W.D.2002), which followed *Hasemeier*, plaintiffs could not proceed on a theory of *res ipsa loquitur* and were required to assert a specific negligence theory against medical malpractice defendants such as these. The Sides conceded that they could not prove the specific way in which the negligence occurred, but urged that they should be able to rely on expert testimony in support of the theory of *res ipsa loquitur* to show that the defendants were negligent. The trial court agreed with defendants that *Hasemeier* precluded plaintiffs from using expert testimony in support of *res ipsa loquitur* in a medical malpractice case. As the Sides had conceded they could not otherwise show negligence,[1] the trial court dismissed the suit with prejudice as to all defendants. Following an opinion by the Missouri Court of Appeals, Eastern District, this Court granted transfer.

## II. EXPERT TESTIMONY MAY BE USED ON THE ISSUE OF NEGLIGENCE IN A RES IPSA LOQUITUR MEDICAL MALPRACTICE CASE

The issue before this Court is a narrow one: whether to permit medical experts to offer opinions on the issue of negligence of the defendants in a medical malpractice case that is brought on a theory of *res ipsa loquitur* rather than based on specific or general negligence. Some background on the general nature and application of *res ipsa loquitur* is helpful to an understanding of its application to medical negligence cases.

■ This Court has declared that the doctrine of *res ipsa loquitur* applies:

when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; and (c) the defendant possesses superior knowledge or means of information as to the cause of the occurrence.

*Bass v. Nooney Co.*, 646 S.W.2d 765, 768 (Mo. banc 1983). The doctrine is used in cases in which it is not clear exactly what caused an injury, but all the probable causes are within the control or right to control of defendant. *Id.*

The only time that this Court has addressed the possible application of *res ipsa loquitur* to medical malpractice cases is in 1962 in *Hasemeier*. In that case, plaintiff's decedent went to the hospital to give birth. Defendant doctor told her husband that the fetus was dead in the womb and that he would need to operate immediately to remove the fetus in order to save the mother's life. Once the operation began, the doctor delivered a healthy baby. The mother, however, died shortly after the operation. Her husband sued, alleging that but for the negligence of the doctor his wife would not have died. He did not assert any specific negligent act of the

---

1. This concession distinguishes the plaintiffs in this case from the plaintiffs in *Hasemeier*, who argued to this Court that they did not need to rely on *res ipsa loquitur* because "the petition stated a claim entitling plaintiff to relief under his allegations of general negligence." *Hasemeier*, 361 S.W.2d at 699. The plaintiffs here expressly contend they cannot prove their allegations absent reliance on *res ipsa loquitur*.

doctor or offer any expert testimony to support his theory, however. Instead, he sought to bring the case on a theory of *res ipsa loquitur*, arguing that it spoke for itself that if the doctor were not negligent, his wife would not have died. He argued that he should not, therefore, need expert testimony. 361 S.W.2d at 699.

*Hasemeier* rejected plaintiff's argument. In so doing, it noted that the *res ipsa loquitur* doctrine:

> is a rule of evidence whereby a submissible issue of negligence may be made by adducing a particular kind of circumstantial evidence, viz., by showing the fact of an occurrence which, because of its character and circumstances, permits a jury to draw a rebuttable inference, based on the common knowledge or experience of laymen, that the causes of the occurrence in question do not ordinarily exist in the absence of negligence on the part of the one in control.

361 S.W.2d at 700. *Hasemeier* further noted that the doctrine does not normally have any application to medical malpractice cases except where expert testimony is not required to show a breach of the standard of care, such as in cases in which (1) the patient receives an unusual injury to an area of the body unaffected by the operation or treatment; or (2) the physician left a foreign object in an operative cavity, as even a lay person can assess negligence in such a case. *Id.* The Court held that to permit recovery without expert testimony in such cases, it was a prerequisite "that laymen know, based on their common knowledge or experience" that the undesirable outcome would not

have occurred unless the defendant physician was negligent. *Id.* at 701.

In making this statement, however, *Hasemeier* was not rejecting an attempt to present an expert on the *res ipsa loquitur* question, for no expert was offered by the plaintiff in that case. Rather, it was saying that, in the absence of expert testimony, a jury of lay persons could not find negligence under a *res ipsa loquitur* theory where the medical issue is not one within their understanding. The cases on which it relied were cases requiring medical testimony in medical malpractice cases. *See, e.g., Williams v. Chamberlain,* 316 S.W.2d 505, 510–11 (Mo.1958) (plaintiff's case properly dismissed where she failed to present expert to testify to cause of tetanus infection after treatment by doctor). At best, *Hasemeier* appeared to assume that the only possible choices were either to use a medical expert on a specific or general negligence theory or to use no expert and submit under *res ipsa loquitur*, as is done in other *res ipsa loquitur* cases.

Subsequent cases decided by our court of appeals, however, have put a gloss on the holding in *Hasemeier*, incorrectly stating that it stands for the principle that "a plaintiff cannot use expert testimony to establish a *res ipsa loquitur* case in a medical malpractice action." *Spears,* 86 S.W.3d at 62.[2] In fact, as noted, the issue whether an expert could testify in a *res ipsa loquitur* medical malpractice case was not raised or discussed in *Hasemeier.*

In 1965, three years after this Court's opinion in *Hasemeier,* the Second Restatement of Torts was published. The doctrine of *res ipsa loquitur* is set out in section 328D. Comment d of section 328D

---

**2.** *See also, e.g., Redfield v. Beverly Health & Rehab. Servs., Inc.,* 42 S.W.3d 703, 714 (Mo. App. E.D.2001) (addressing application of *res ipsa loquitur* and preclusion of expert testimony); *Seippel–Cress v. Lackamp,* 23 S.W.3d

660, 667–69 (Mo.App. W.D.2000) (discussing need for expert testimony); *Zumwalt v. Koreckij,* 24 S.W.3d 166, 169 (Mo.App. E.D. 2000) (requiring laypersons to know negligence would be cause of injury).

of the Second Restatement expressly endorses the use of expert testimony in medical malpractice *res ipsa loquitur* cases, stating, in pertinent part:

> expert testimony that such an event usually does not occur without negligence may afford a sufficient basis for the inference. Such testimony may be essential to the plaintiff's case where, as for example in some actions for medical malpractice, there is no fund of common knowledge which may permit laymen reasonably to draw the conclusion.

**Restatement (Second) of Torts Sec. 328D, cmt. d.**

This Court did not have the benefit of the Restatement position at the time of *Hasemeier*, for the first Restatement of Torts did not address *res ipsa loquitur* at all. In the intervening years, this Court has not had occasion to address the application of *res ipsa loquitur* in malpractice cases in which an expert was offered. In *McGowen v. Tri–County Gas Co.*, 483 S.W.2d 1, 5 (Mo.1972), however, this Court did approve section 328D of the Restatement Second of Torts in regard to its statement of the principles governing *res ipsa loquitur* and comments f and g thereto, concerning the burden of proof in *res ipsa loquitur* cases involving multiple defendants. It there found, as have many later cases, that the issue in a *res ipsa loquitur* case is the right to control rather than the actual exercise of control. Applying that principle, *McGowen* held that where plaintiff showed that two defendants both had a right to control aspects of the gas distribution system which led to the gas heater that exploded, plaintiff could bring a *res ipsa loquitur* claim against both. *Id.* at 5–6.

■ The vast majority of courts and commentators have adopted the approach taken in comment d to section 328D, holding that expert testimony as to negligence may be offered in *res ipsa loquitur* medical malpractice cases. As stated in *Keeton, Prosser and Keeton on Torts*, 256 (5th Ed. 1984), in medical malpractice claims pursued under a *res ipsa loquitur* theory, "expert testimony is indispensable before any negligence may be found." *Id.* In the 43 years since the Second Restatement was promulgated, the commentators have noted that, "the modern trend is to allow both a *res ipsa loquitur* instruction and expert evidence in medical malpractice cases." Karyn K. Albin, *Res Ipsa Loquitur and Expert Opinion Evidence in Medical Malpractice Cases: Strange Bedfellows*, 82 Va. L.Rev. 325, 327 (1996). The following 28 jurisdictions clearly permit the use of expert evidence in *res ipsa loquitur* medical malpractice cases: Arizona,[3] Arkansas,[4] California,[5] Colorado,[6] Connecticut,[7] Illinois,[8] Indiana,[9] Iowa,[10]

3. *McWain v. Tucson Gen. Hosp.*, 137 Ariz. 356, 670 P.2d 1180, 1183–84 (Ct.App.1983) ("In determining whether the doctrine applies, the court may rely on both common knowledge and the testimony of expert witnesses").

4. *Schmidt v. Gibbs*, 305 Ark. 383, 807 S.W.2d 928, 930–32 (1991) ("we clearly state here that the doctrine of *res ipsa loquitur* may apply in cases of medical malpractice on the part of any and all medical care providers").

5. *Kerr v. Bock*, 5 Cal.3d 321, 95 Cal.Rptr. 788, 486 P.2d 684, 686 (1971) (en banc) ("*res ipsa* would apply only if there were expert testimony which would support such an instruction").

6. *Holmes v. Gamble*, 624 P.2d 905, 907 (Colo. App.1980) ("expert testimony . . . is necessary before the doctrine of *res ipsa loquitur* can be applied").

7. *Gilliam v. Thomas*, No. CV950324686, 1997 WL 746384 (Conn.Super.Ct. Nov.20, 1997) ("Where it cannot be inferred that the injury normally does not occur without negligence, expert testimony on that issue is necessary before *res ipsa loquitur* can be applied").

Kentucky,[11] Louisiana,[12] Massachusetts,[13] Michigan,[14] Nebraska,[15] New Jersey,[16] New Mexico,[17] New York,[18] Ohio,[19] Oklahoma,[20] Oregon,[21] Pennsylvania,[22] Rhode Island,[23] South Dakota,[24] Tennessee,[25]

**8.** *Walker v. Rumer*, 72 Ill.2d 495, 21 Ill.Dec. 362, 381 N.E.2d 689, 691 (1978) (whether "the occurrence is such as in the ordinary course of things would not have happened" "if the party exercising control or management had exercised proper care … may rest either upon the common knowledge of laymen or expert testimony").

**9.** *Vogler v. Dominguez*, 624 N.E.2d 56, 61 (Ind.Ct.App.1993) ("A plaintiff relying upon a *res ipsa loquitur* may show that the event or occurrence was more probably the result of negligence by relying upon common sense and experience or expert testimony").

**10.** *Kennis v. Mercy Hosp. Med. Ctr.*, 491 N.W.2d 161, 167 (Iowa 1992) (*res ipsa* "may be proved by the common experience of laypersons or experts").

**11.** *Green v. Owensboro Med. Health Sys. Inc.*, 231 S.W.3d 781, 784 (Ky.App.2007) ("medical testimony [can] provide[ ] an adequate foundation for *res ipsa loquitur* on more complex matters") (internal quotations omitted).

**12.** *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d 654, 667 n.11 (La.1990) ("In medical malpractice actions based on *res ipsa loquitur* the plaintiff generally must use expert testimony to establish that the plaintiff's injury is a type which ordinarily would not occur in the absence of negligence").

**13.** *Enrich v. Windmere Corp.*, 416 Mass. 83, 616 N.E.2d 1081, 1085 (1993) ("jury must be able to find either by expert evidence or by their own common knowledge that the mere occurrence of the accident shows negligence as a cause").

**14.** *Jones v. Porretta*, 428 Mich. 132, 405 N.W.2d 863, 873 (1987) ("expert evidence must usually be presented" in *res ipsa* cases).

**15.** *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354, 358–59 (2004) ("under the *res ipsa loquitur* doctrine, negligence may be inferred … when proof by experts … creates an inference that negligence caused the injuries").

**16.** *Buckelew v. Grossbard*, 87 N.J. 512, 435 A.2d 1150, 1157–58 (1981) ("expert testimony to the effect that the medical community recognizes that an event does not ordinarily occur in the absence of negligence may afford a sufficient basis for the application of the doctrine of *res ipsa loquitur* ").

**17.** *Mireles v. Broderick*, 117 N.M. 445, 872 P.2d 863, 866 (N.M.1994) ("We join the growing consensus of courts from other jurisdictions and adopt scholarly commentary to hold that the foundation for an inference of negligence may be formed by expert testimony that a certain occurrence indicates the probability of negligence").

**18.** *States v. Lourdes Hosp.*, 100 N.Y.2d 208, 762 N.Y.S.2d 1, 792 N.E.2d 151, 152 (2003) ("It is proper to allow the use of expert medical testimony to inform the jury's decision on this element of *res ipsa loquitur* ").

**19.** *Morgan v. Children's Hosp.*, 18 Ohio St.3d 185, 480 N.E.2d 464, 467 (1985) (holding that use of expert testimony does not foreclose application of *res ipsa* ).

**20.** *Sisson v. Elkins*, 801 P.2d 722, 724 (Okla. 1990) (noting that an expert's testimony failed to supply necessary foundation for *res ipsa loquitur* instruction).

**21.** *Brannon v. Wood*, 251 Or. 349, 444 P.2d 558, 563 (1968) (en banc) (jurors are "permitted to draw upon the testimony of experts" in *res ipsa* cases).

**22.** *Jones v. Harrisburg Polyclinic Hosp.*, 496 Pa. 465, 437 A.2d 1134, 1138 (1981) ("the inference of negligence should be permitted where it can be established from expert medical testimony that such an event would not ordinarily occur absent negligence").

**23.** *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676, 691 (1972) (*res ipsa* "can be called upon if there is expert testimony that the injury complained of would not have occurred had the physician exercised due care").

**24.** *Van Zee v. Sioux Valley Hosp.*, 315 N.W.2d 489, 492 (S.D.1982) (in *res ipsa* "negligence must be established by the testimony of medical experts").

**25.** *Seavers v. Methodist Med. Center of Oak Ridge*, 9 S.W.3d 86, 91–97 (Tenn.1999) (discussed infra).

Utah,[26] Vermont,[27] Washington,[28] Wisconsin,[29] and the District of Columbia.[30]

Only eight states that have expressly considered whether to permit expert evidence in *res ipsa loquitur* medical malpractice cases have refused to permit expert evidence, holding that *res ipsa* is limited to those cases where lay knowledge would permit an inference of negligence, *see e.g.*, Florida, *Anderson v. Gordon*, 334 So.2d 107, 109 (Fla.App.1976); Maryland, *Orkin v. Holy Cross Hosp.*, 318 Md. 429, 569 A.2d 207, 209 (1990); North Carolina, *Bowlin v. Duke University*, 108 N.C.App. 145, 423 S.E.2d 320, 323 (1992);

North Dakota, *Wasem v. Laskowski*, 274 N.W.2d 219, 225 (N.D.1979); Texas, *Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex.1990); and Wyoming, *Keller v. Anderson*, 554 P.2d 1253, 1260–61 (Wyo. 1976), or that a state statute requires expert testimony of specific negligence in medical malpractice cases, *see, e.g.*, Idaho, *LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962, 966 (1980); Nevada, *Banks v. Sunrise Hosp.*, 120 Nev. 822, 102 P.3d 52 (2004).[31]

As the Tennessee Supreme Court explained in 1999 when it evaluated the precedent in favor of both positions:

---

26. *King v. Searle Pharm.*, 832 P.2d 858, 862 (Utah 1992) ("expert evidence is usually necessary to establish ... a foundation for a legitimate *res ipsa* inference").

27. *Connors v. Univ. Assoc. in Obstetrics & Gynecology, Inc.*, 4 F.3d 123 (2d Cir.1993) (concluding that expert evidence is admissible under Vermont law).

28. *Pederson v. Dumouchel*, 72 Wash.2d 73, 431 P.2d 973, 979 (Wa.1967) (holding that "definite expert testimony" permits an inference of negligence under *res ipsa* theory).

29. *Hoven v. Kelble*, 79 Wis.2d 444, 256 N.W.2d 379, 383 (1977) ("likelihood that negligence was the cause may be shown by expert medical testimony").

30. *Harris v. Cafritz Mem'l Hosp.*, 364 A.2d 135, 137 (D.C.1976) (plaintiff may present expert testimony in *res ipsa* case).

31. Four additional jurisdictions do not permit *res ipsa loquitur* in medical malpractice cases at all, without regard to the use of expert testimony, and thus are not helpful to this analysis. *See, e.g.*, *Baker v. Chastain*, 389 So.2d 932, 935 (Ala.1990) ("The doctrine of res ispa loquitur does not apply to medical malpractice cases."); *D.P. v. Wrangell Gen. Hosp.*, 5 P.3d 225, 234 (Alaska 2000) (holding that Alaska does not recognize *res ipsa loquitur* in medical malpractice cases); *Oakes v. Magat*, 263 Ga.App. 165, 587 S.E.2d 150, 152 (2003) ("Georgia courts have expressly ruled ... that the doctrine of *res ipsa loquitur* does

not apply in a malpractice suit."), *Chaney v. Burgess*, 246 S.C. 261, 143 S.E.2d 521, 523 (1965) ("the so-called doctrine of *res ipsa loquitur* does not apply in this state").

In the remaining ten states (Delaware, Hawaii, Kansas, Maine, Minnesota, Mississippi, Montana, New Hampshire, Virginia, and West Virginia), the issue of whether experts can testify in support of a *res ipsa loquitur* theory in a medical malpractice case has not been clearly resolved. In some states, the cases that have arisen are ones in which the plaintiff sought to submit the case without the benefit of expert testimony, as in *Hasemeier*, and the court was not called on to address whether such testimony would have been permitted. *See, e.g.*, *Lacy v. G.D. Searle & Co.*, 484 A.2d 527 (Del.Super. 1984); *Medina v. Figuered*, 3 Haw.App. 186, 647 P.2d 292, 293 (1982); *Todd v. Eitel Hosp.*, 306 Minn. 254, 237 N.W.2d 357 (1975); *Dalton v. Kalispell Reg'l Hosp.*, 256 Mont. 243, 846 P.2d 960 (1993); *Durocher v. Rochester Equine Clinic*, 137 N.H. 532, 629 A.2d 827 (1993); *Farley v. Meadows*, 185 W.Va. 48, 404 S.E.2d 537 (1991) (all holding expert testimony needed in complex case). In others, *res ipsa loquitur* was held not to apply because the evidence presented could not rule out causes not attributable to defendant's negligence, *see, e.g.*, *Savina v. Sterling Drug*, 247 Kan. 105, 795 P.2d 915 (1990); *Powell v. Methodist Health Care–Jackson Hosps.*, 876 So.2d 347 (Miss.2004); or the court just did not reach the issue, *see, e.g.*, *Caron v. Pratt*, 336 A.2d 856 (Me.1975); *Dickerson v. Fatehi*, 253 Va. 324, 484 S.E.2d 880 (1997).

[T]he better rule is to allow expert testimony in medical malpractice cases, where otherwise admissible, to assist the parties in establishing or rebutting the inference of negligence under a theory of *res ipsa loquitur* .... [W]e see no reason to continue to preclude the use of the *res ipsa* doctrine simply because a claimant's injury is more subtle or complex than the leaving of a sponge or needle in the patient's body. As recognized by the Restatement and a majority of other jurisdictions, the likelihood of negligence necessary to support a charge under *res ipsa loquitur* may exist even when there is no fund of common knowledge concerning the nature and circumstances of an injury.

\* \* \*

The use of expert testimony ... serves to bridge the gap between the jury's common knowledge and the complex subject matter that is 'common' only to experts in a designated field. With the assistance of expert testimony, jurors can be made to understand the higher level of common knowledge and, after assessing the credibility of both plaintiff's and defendant's experts, can decide whether to infer negligence from the evidence.

*Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 94–95 (Tenn.1999). *See also Mireles v. Broderick*, 117 N.M. 445, 872 P.2d 863, 866 (1994) ("We join the growing consensus of courts from other jurisdictions and adopt scholarly commentary to hold that the foundation for an inference of negligence may be formed by expert testimony that a certain occurrence indicates the probability of negligence").

The number of states adopting the use of *res ipsa loquitur* in medical malpractice cases continues to grow. *See, e.g., Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354,

358–59 (2004) ("under the *res ipsa loquitur* doctrine, negligence may be inferred ... when proof by experts ... creates an inference that negligence caused the injuries"); *Green v. Owensboro Med. Health Sys. Inc.*, 231 S.W.3d 781, 784 (Ky.App. 2007) ("medical testimony [can] provide[ ] an adequate foundation for *res ipsa loquitur* on more complex matters"); and *States v. Lourdes Hosp.*, 100 N.Y.2d 208, 762 N.Y.S.2d 1, 792 N.E.2d 151, 152 (2003) ("It is proper to allow the use of expert medical testimony to inform the jury's decision on this element of *res ipsa loquitur* ").

■ This Court finds the reasoning of section 328D of the Restatement and the cases following it to be persuasive. Where a plaintiff is unable to show which specific act of negligence of the defendants caused his or her injury, but is able to show that all the potential causes are within the control or right to control of defendants, and that they have greater access to knowledge about the cause of the injury than does plaintiff, and a medical expert testifies that such injury does not occur in the absence of negligence of the defendants, then a prima facie case for medical malpractice has been made.

■ This holding does not obviate the need to prove negligence on the part of defendant, nor does it open a "Pandora's box" as defendants suggest. To the contrary, as noted, it brings Missouri in line with the vast majority of other jurisdictions to address this issue and with the views of respected authorities and commentators in the area. As in other types of *res ipsa loquitur* cases, this doctrine simply allows the plaintiff who can show that the injury does not occur in the absence of negligence to present to the jury an inference that the defendants were negligent; the defendants of course can rebut that inference with evidence that they

were not negligent. *Martin v. Washington*, 848 S.W.2d 487, 495 (Mo. banc 1993) (discussing inferences created by proper use of *res ipsa loquitur*). The ultimate burden of proof, as always, remains with the plaintiff to convince the jury that a defendant was negligent and that such negligence caused the plaintiff's injury. *See, e.g., Hasemeier,* 361 S.W.2d at 700; *Weaks v. Rupp,* 966 S.W.2d 387, 394 (Mo. App.1998).

Defendants argue that, even were it otherwise appropriate to apply a *res ipsa loquitur* theory in a medical malpractice case, use of that theory is prohibited by section 538.225, RSMo Supp.2007, as interpreted in *Budding v. SSM Healthcare Sys.,* 19 S.W.3d 678 (Mo. banc 2000). Section 538.225.1 states:

> In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff … shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

Sec. 538.225.1. Such an affidavit must be separately provided as to each defendant. Sec. 538.225.4.

In *Budding,* this Court held that even though section 538.225 deals only with the need for affidavits regarding negligence, implicit within it is the requirement that one can submit a claim against a health care provider only on a negligence theory. *Budding* thus found that the strict liability theory asserted by the plaintiff in that case was impermissible under the statute. 19 S.W.3d at 680–81.

Defendants argue that section 538.225.1 similarly requires that only a specific negligence theory can be brought against a medical malpractice defendant. Unlike in *Budding,* however, they are unable to cite to any specific language in the statute that so provides. They cite simply to the fact that the legislature has required proof that some act of defendant caused or contributed to cause the injury. This is required to be shown in *res ipsa loquitur* cases also, however, and provides no basis on which to determine that the legislature would disapprove of the use of *res ipsa loquitur* in malpractice cases.[32]

■ Defendants also argue that this Court should read a disapproval of *res ipsa loquitur* into the statute from the fact that it, and similar legislation passed in recent years, evidences a desire to limit the scope of claims against health care providers. While an understanding of the policies that led the legislature to pass certain statutes certainly can be helpful in interpreting them when they are ambiguous, it does not authorize this Court to speculate as to what the legislature might do were they asked to address a different issue—such as *res ipsa loquitur*—in the future. It would be improper for this Court to decide a case based on a policy the legislature had not adopted.

Defendants do make a valid point, however, that section 538.225 clearly does require a showing of negligence on the part of each defendant. Sec. 538.225.1 (affidavit must state "that the defendant health

---

**32.** Defendants cite to an Idaho statute that requires a plaintiff to "affirmatively prove by direct expert testimony" that a health care provider was negligent, Idaho Code Ann. Sec. 6–1012; sec. 538.225 does not contain comparable language.

care provider failed to use such care ... and that such failure directly caused or directly contributed to cause the damages ...."). This would prohibit shifting the burden of proof to defendants to prove which one of them was negligent where plaintiff alleged that only one of them was at fault and plaintiff simply did not know which it was.[33]

Here, on the other hand, plaintiffs allege that all three defendants were negligent and that their negligence caused or contributed to cause the infection. More specifically, they allege that Dr. Lee performed the surgery assisted by agents and employees of St. Anthony's and that Dr. Lee was working within the scope and course of his employment with Tesson Heights at the time, so that "during said surgery, defendants Dr. Lee, St. Anthony's and Tesson Heights infected plaintiff Janice F. Sides' body at the site of the surgery with the Escherichia coli (E.Coli) bacteria."

This Court has addressed similar allegations of joint control of the instrumentalities that allegedly caused the injury in *res ipsa loquitur* cases on at least three prior occasions. In the first such case, *Crystal Tire Co. v. Home Serv. Oil Co.*, 465 S.W.2d 531 (Mo.1971), the owner of land next to gasoline storage tanks used a theory of *res ipsa loquitur* to sue the owner of the gasoline tanks and the owner of the truck that was filling the tanks when they exploded. Defendants argued that *res ipsa loquitur* was not applicable where plaintiff has sued two defendants, because in such a case plaintiff has failed to prove which defendant caused the injury. This Court rejected that argument, noting that Mis-

souri has long allowed recovery under *res ipsa loquitur* where "at the time the negligence is committed, defendants have actual *joint* control, or the right of *joint* control, of the instrumentalities involved ...". *Id.* at 533 (emphasis added).

Applying this rule, *Crystal Tire* held that because plaintiff presented evidence that filling of a tank with gasoline does not normally result in an explosion in the absence of negligence, that one defendant was "in actual control of the instrumentalities (the truck and the tank)" and the other defendant "had the right to control such instrumentalities," while plaintiff "was totally ignorant of the filling operation," it held that "plaintiff made a submissible case against both defendants under the *res ipsa loquitur* doctrine." *Id.*

The following year, in *McGowen*, 483 S.W.2d at 5, this Court held that "when it is sought to hold two or more defendants, joint control or right to control must be shown to be entitled to judgment against both." But, in determining whether such control or right to control has been shown, this Court (as noted earlier) adopted the reasoning set forth in Restatement Second of Torts section 328D, comment g that control or a right to control sufficient to permit an inference of negligence under *res ipsa loquitur* may be shown where one defendant "shares the control with another.... Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a *res ipsa loquitur* case. The essential question becomes one of whether the probable cause is one which the defendant was

---

**33.** *See, e.g., Crystal Tire Co. v. Home Serv. Oil Co.*, 465 S.W.2d 531, 532–33 (Mo.1971) (acknowledging difference of a theory shifting burden to defendants to prove they did not cause injury from *res ipsa loquitur* and declin-

ing to address whether former should be adopted); *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 247 (Mo. banc 1984) (causal relationship between defendant and injury must be proved).

under a duty to the plaintiff to anticipate or guard against." *Id.*

Applying these rules to the case before it, *McGowen* held that there was evidence that both defendants had sufficient right of control of the gas heater that exploded so as to have a duty to anticipate and guard against the explosion—one installed and owned the gas distribution system for the gas station and the other allegedly had the right of control of it under its lease. *Id.*

Again, in *Bass,* this Court held that both the owner of the building where plaintiff was trapped in an elevator and the Otis Elevator Company, which installed and serviced the elevator, could be sued in *res ipsa loquitur,* stating:

> No valid objection to the application of the doctrine can be made here on the ground of there being two defendants. On the facts of this case, the jury could reasonably find that either or both of the defendants were in control of the elevator, so as to make the application of *res ipsa loquitur* proper.

646 S.W.2d at 768 (*citing Crystal Tire,* 465 S.W.2d at 531).

These principles are applicable here. Plaintiffs have alleged that all defendants were in control or had a right of control of the instrumentalities from which her infection was obtained, that the infection in the surgical site itself is one that does not occur in the absence of negligence, that the defendants all were negligent, that she was unconscious and has no knowledge of how the infection occurred, and that the defendants have superior knowledge of how it occurred.

■ Whether plaintiffs will be able to meet their burden of proof under a *res ipsa loquitur* theory in this case, where they allege defendants' negligence is responsible for the infection Mrs. Sides obtained in the surgical site of her back

operation, and whether they will be able to show that each defendant controlled or had a right to control the settings in which the infection may have occurred, are questions for determination below. Defendants may be correct that expert testimony will show that such infections often occur in the absence of negligence, and that they did not have control or a right to control of the instrumentalities that may have caused the infection, and that it may have been acquired outside the operating room. If so, they may succeed in obtaining a defense judgment. We hold only that plaintiffs are not prohibited from relying on expert testimony in attempting to make out their *res ipsa loquitur* theory.

## III. CONCLUSION

For the reasons set out above, the judgment is reversed, and the cause is remanded.

TEITELMAN, RUSSELL, WOLFF and BRECKENRIDGE, JJ., concur.

BURRELL, Sp.J., concurs in result in separate opinion filed.

PRICE, J., not participating.

OPINION CONCURRING IN RESULT

DON E. BURRELL, JR., Special Judge.

I respectfully disagree with the majority's characterization of what is at issue in this case. The issue is simply whether the plaintiffs' current petition, on its face, states a claim for which relief can be granted. This Court reviews *de novo* the trial court's dismissal to determine whether the petition "invoke[s] principles of substantive law." *Weems v. Montgomery,* 126 S.W.3d 479, 484 (Mo.App.2004). All averments in the petition are assumed to be true, and the Court "liberally grant[s] all

reasonable inferences therefrom." *Gurtz v. Gurtz*, 186 S.W.3d 435, 438 (Mo.App. 2006). In doing so, the Court reviews the petition in an "almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action or of a cause that might be adopted in [the] case." *Hammond v. Municipal Correction Institute*, 117 S.W.3d 130, 133 (Mo. App.2003).

In this case, Janice F. Sides and Clyde Sides ("Plaintiffs") appeal the trial court's dismissal of their third amended petition. In that petition, Plaintiffs allege that: (1) defendants performed a lumbar laminectomy upon Janice Sides ("Ms. Sides"), and that during said surgery, defendants infected her with E. coli bacteria; (2) Ms. Sides was unconscious during the surgery and throughout the procedure her body and the surgical site were in the exclusive control of defendants; (3) defendants have superior knowledge of the cause of the infection; and (4) infection with E. coli bacteria does not normally happen during surgery in the absence of negligence.

Because Missouri is a fact-pleading state, petitions are required to contain a "short and plain statement of the facts." Rule 55.05. To withstand a motion to dismiss for failure to state a claim for which relief can be granted, a petition must contain allegations of the ultimate facts necessary for recovery or allegations from which such ultimate facts can be inferred. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 379–80 (Mo. banc 1993); *Sofka v. Thal*, 662 S.W.2d 502, 509 (Mo. banc 1983). Negligence is an ultimate fact, not a conclusion,

and *res ipsa loquitur* is an inference aiding in the proof of a matter; it is not a cause of action or a rule of pleading. *Maybach v. Falstaff Brewing Corp.*, 359 Mo. 446, 222 S.W.2d 87, 92 (1949).

In *Hasemeier v. Smith*, 361 S.W.2d 697 (Mo. banc 1962), a medical negligence case, the defendant doctor was employed by the plaintiff's spouse to attend to and treat her during her prenatal, delivery, and postnatal periods. 361 S.W.2d at 698–99. When his wife went into labor, the plaintiff conveyed her to the hospital, where the defendant doctor informed him that the baby in his wife's womb was dead and that, to prevent harm to the plaintiff's wife, the defendant needed to "take" the baby. *Id.* at 699. A general anesthetic was given to the plaintiff's wife, and a live baby was delivered. *Id.* The plaintiff's wife, however, never regained consciousness and died shortly after the child was born. *Id.*

In reviewing the sufficiency of the plaintiff's petition, this Court noted that, " '[g]enerally, the doctrine of res ipsa loquitur is not applicable in malpractice cases, and only in unusual circumstances may a physician or surgeon be found guilty of a failure to exercise the requisite degree of care in the absence of expert medical testimony tending to so prove.' " *Id.* at 700 (quoting *Williams v. Chamberlain*, 316 S.W.2d 505, 511 (Mo.1958)).[1]

After expressing its belief that the facts alleged in the plaintiff's petition would not allow the claim to be submitted to a jury on the theory of *res ipsa loquitur*, the Court nonetheless overruled the trial court's dismissal and remanded the case

---

1. The court then recognized the existence of two general lines of medical malpractice cases where it had been held that a sufficient submission of negligence could be made by the use of *res ipsa loquitur*. *Id.* Those two exceptions were: 1) cases where, during the course of an operation or procedure (especial-

ly when undergone while the patient is unconscious), a patient suffers an injury to a portion of the body not being treated; and 2) cases where a foreign object was left inside a patient after a surgical procedure had been completed. *Id.*

for further proceedings because the petition alleged sufficient facts to state a claim for general negligence. *Hasemeier*, 361 S.W.2d at 701–02.

Under this Court's ruling in *Hasemeier*, if a plaintiff alleges negligence but cannot be expected to know the exact facts relating to the cause of the negligent act, and those facts are peculiarly within the knowledge of the defendant, then the plaintiff is not required to allege the particular cause. *Id.* This rule allows Plaintiffs to maintain their cause of action at this point in the process because their petition pleads the ultimate facts necessary to support an inference (based on circumstantial evidence) that defendants were negligent.

For the foregoing reason, I respectfully disagree with the majority's opinion as it purports to hold that expert testimony may be used in a medical negligence case to support an inference of negligence based on the doctrine of *res ipsa loquitur.* Because that issue deals with how the allegations of a petition might eventually be proven, it is not related to the sufficiency of a pleading and any attempt to address it at this stage of the litigation is premature. However, because I believe plaintiffs have adequately pleaded a claim of general negligence in their third amended petition under this Court's prior ruling in *Hasemeier*, I also would reverse the trial court's dismissal of the case and remand it for further proceedings. Those further proceedings eventually may, or may not, bring the issue addressed by the majority properly before this Court for its resolution.