## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Shivkumar Lakshminarayan Iyer,**
**Petitioner Below, Petitioner**

**FILED**

**May 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 17-0279**  (Kanawha County 16-AA-15)

**West Virginia Board of Medicine,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Shivkumar Lakshminarayan Iyer, by counsel Mark Hobbs, appeals the Circuit Court of Kanawha County's February 22, 2017, order that denied his appeal from a final order of Respondent West Virginia Board of Medicine ("the BOM") that revoked petitioner's license to practice medicine and surgery in West Virginia. The BOM, by counsel Greg S. Foster, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner became licensed to practice medicine in the State of West Virginia on September 9, 1996, specializing in general psychiatric care and substance abuse treatment.[1]  At all times relevant, he was employed by the Logan Treatment Center in Logan, West Virginia, and then by the New Life Clinic in Oak Hill, West Virginia.

On October 4, 2013, the BOM received an investigative report from the Office of

---

[1] Petitioner's license to practice medicine and surgery in West Virginia was summarily suspended in May of 2002 for alleged violations of the West Virginia Medical Practice Act and/or the West Virginia Board of Medicine Legislative Rules. His license remained in suspended status until July of 2004, at which time petitioner and the BOM entered into a consent order subjecting petitioner's license to a stayed revocation and an active probationary period of five years. Under the consent order, petitioner was permitted to practice under certain conditions and restrictions set forth therein, including, inter alia, the requirement that he submit to random and unannounced drug and alcohol testing. Petitioner complied with the conditions of the consent order and, upon completion of the five-year period of stayed revocation/probation on July 12, 2009, his license to practice was restored to active, unrestricted status.

1

Inspector General Division of Audits and Investigations for the Commonwealth of Kentucky Cabinet for Health and Family Services ("Kentucky report") that outlined numerous concerns regarding petitioner's practice of medicine, including reports concerning possible inappropriate prescribing by petitioner.

On November 17, 2013, the BOM's Complaint Committee initiated a complaint to investigate the allegations contained in the Kentucky report. Several subpoenas duces tecum were issued for certain patient records and served on petitioner. As part of the investigation, on June 18, 2014, the BOM's investigator, accompanied by two members of the US 119 Drug Task Force, traveled to the Logan Treatment Center to serve petitioner with a newly authorized subpoena duces tecum for certain patient records. While there, the investigator and two officers observed petitioner exit the passenger's side of a vehicle in the facility's parking lot. They further observed that petitioner swayed, stumbled, and talked in a rambling, high-pitched voice; that he wore a heavily soiled jacket and pants with multiple, white crusty stains; that he appeared unkempt; and that, while speaking with the investigator, his speech was slurred. After speaking with the investigator and accepting service of the BOM's subpoena, petitioner entered his place of employment where the evidence showed that he prescribed controlled substances for patients that day.

On July 11, 2014, petitioner produced patient records for sixteen patients in compliance with the BOM's subpoena duces tecum. At the next meeting of the BOM's Complaint Committee on July 13, 2014, the committee determined that it would request that the full BOM authorize the issuance of an order requiring petitioner to submit to a mental and physical evaluation, including drug testing, by a physician or physicians approved by the BOM. *See* W.Va. Code § 30-3-14(f).

On July 14, 2014, the BOM ordered petitioner, known to it at that time only as "Physician A," to participate in a mental and physical examination, which was set for Thursday, July 17, 2014. Petitioner reported for drug testing on the designated date; however, at petitioner's request, the mental and physical examinations were rescheduled. Meanwhile, petitioner filed a petition for writ of prohibition in the Circuit Court of Kanawha County seeking to prohibit the BOM-ordered examinations. The petition was denied and petitioner appeared for the rescheduled mental and physical examinations.

Petitioner was examined by Dr. Ralph Smith on the designated dates. Dr. Smith was qualified as an expert in this case in the areas of psychiatry and substance abuse medicine. According to Dr. Smith, petitioner's physical examination was normal. Dr. Smith diagnosed petitioner with social anxiety disorder, attention deficient hyperactivity disorder, and an unspecified personality disorder with avoidance features. He opined that the controlled substances that petitioner was then being prescribed by his personal physician were inappropriate[2] and that petitioner's psychiatric problems should be treated by a psychiatrist rather than with medication prescribed by a primary care provider. Notwithstanding the above, Dr.

---

[2] Petitioner was taking Xanax, Adderall, Lunesta, Soma, and Hydrocodone.

Smith did not determine, based upon his mental and physical examinations of petitioner, that petitioner is unfit to practice medicine and surgery safely.

Thereafter, the BOM retained Dr. James Abel, an expert in the fields of psychiatry and substance abuse and addiction medicine, to review petitioner's treatment practices. After reviewing the medical records for seventeen of petitioner's patients, Dr. Abel opined that petitioner violated numerous provisions of the West Virginia Medical Practice Act and the West Virginia Board of Medicine Legislative Rules. Dr. Abel opined that petitioner deviated from the standard of care in his treatment of his psychiatric patients, citing numerous specific acts and/or omissions by petitioner.

Dr. Abel submitted his report to the Complaint Committee on February 5, 2015. The BOM thereafter convened an emergency meeting where it was determined that for petitioner "to continue to hold an active license to practice medicine in the State of West Virginia constitutes an immediate danger to the health, welfare and safety of the public." The BOM summarily suspended petitioner's license in accordance with the provisions of West Virginia Code § 30-3-14(k) by issuing an "Order of Summary Suspension of License to Practice Medicine and Surgery with Notice of Hearing."

The BOM set the matter for hearing within the expedited time frame set forth in West Virginia Code § 30-3-14(k). However, Petitioner requested a continuance and waived the timeline requirements of West Virginia Code § 30-3-14(k). Upon mutual agreement of the parties, the hearing was scheduled for May 7, 2015. An independent hearing examiner conducted a hearing on the full merits of the underlying complaint over five days during a two-month period.[3]

In a recommended decision issued on December 15, 2015, the hearing examiner found that petitioner violated numerous provisions of the West Virginia Medical Practice Act, West Virginia Code §§ 30-3-1 through -17, and the West Virginia Board of Medicine Legislative Rules, 11 C.S.R. §§ 1A-1 through -13.[4] Based upon these violations, the hearing examiner

---

[3] The hearing was conducted on May 7 and 8, 2015, June 5, 2015, and July 1 and 8, 2015.

[4] The hearing examiner determined that the BOM proved the following by clear and convincing evidence: that petitioner violated West Virginia Code § 30-3-14(c)(13) and 11 C.S.R. § 1A-12.2.a.A-D by prescribing controlled substances to certain patients other than in good faith and in a therapeutic manner in accordance with accepted medical standards and in the course of his professional practice, and repeatedly prescribing controlled substances to those patients with the intent or knowledge that such substances would be used other than medicinally or for an accepted therapeutic purpose and/or in such amounts that, under the circumstances, that the amount prescribed or dispensed were excessive under accepted and prevailing medical practice standards; that petitioner failed to keep written records justifying the course of treatment for certain patients, in violation of West Virginia Code § 30-3-14(c)(11) and 11 C.S.R. § 1A-12.1.u; that petitioner's treatment of certain patients demonstrated a lack of professional competence to practice medicine with a reasonable degree of skill and safety for patients, in violation of West (continued . . .)

3

determined that petitioner was unqualified to practice medicine and surgery in this state and that petitioner's continued licensing presented an immediate and continuing danger to the public. The hearing examiner thus recommended that petitioner's license to practice medicine and surgery in West Virginia be revoked.

In a final order issued on January 11, 2016, a quorum of the BOM adopted the hearing examiner's findings, conclusions, and recommendations in their entirety. Petitioner appealed the BOM's decision to the Circuit Court of Kanawha County. By order entered February 17, 2017, the circuit court affirmed the BOM's decision. This appeal followed.

> Under the West Virginia Administrative Procedures Act, a circuit court
>
> may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."' Syl. Pt. 2, *Shepherdstown Volunteer Fire Department v. Human Rights Comm'n,* 172 W.Va. 627, 309 S.E.2d 342 (1983)." Syllabus Point 1, *St. Mary's Hospital v. State Health Planning and Development Agency,* 178 W.Va. 792, 364 S.E.2d 805 (1987).

Syl. Pt. 1, in part, *W.Va. Health Care Cost Review Auth. v. Boone Mem'l Hosp.,* 196 W. Va. 326, 472 S.E.2d 411 (1996). We further explained in *Modi v. W.Va. Bd. of Med.*, 195 W. Va. 230,

---

Virginia Code § 30-3-14(c)(20) and (21), 11 C.S.R. § 1A-12.1.h., i., and j., and *Webb v. West Virginia Board of Medicine*, 212 W. Va. 149, 569 S.E.2d 225 (2002); that petitioner made deceptive, untrue, or fraudulent representations in his practice by writing prescriptions for patients on prescription pads that did not accurately reflect petitioner's place of practice and/or proper contact information, in violation of West Virginia Code § 30-3-14(c)(9) and 11 C.S.R. § 1A-12.1.s; that petitioner made deceptive, untrue, or fraudulent representations in his practice by writing prescriptions for controlled substances for a certain patient, which dispensed controlled substances were then transferred to petitioner, in violation of West Virginia Code § 30-3-14(c)(9) and 11 C.S.R. § 1A-12.1.s; that, on June 18, 2014, petitioner failed to practice medicine with reasonable skill and safety due to physical or mental impairment, including deterioration through the aging process, loss of motor skill, and/or abuse of drugs or alcohol, in violation of West Virginia Code § 30-3-14(c)(21) and 11 C.S.R. § 1A-12.1.h. and j; and that petitioner engaged in dishonorable, unethical, and/or unprofessional conduct of a character likely to deceive, defraud, or harm the public or any member of the public, and/or conduct that has the effect of bringing the medical profession into disrepute, in violation of West Virginia Code § 30-3-14(c)(17), 11 C.S.R. §§ 1A-12.1.e and j, -12.2.a and -12.2.d.

4

239, 195 S.E.2d 230, 239 (1995), that

> findings of fact made by an administrative agency will not be disturbed on appeal unless such findings are contrary to the evidence or based on a mistake of law. In other words, the findings must be clearly wrong to warrant judicial interference. . . . Accordingly, absent a mistake of law, findings of fact by an administrative agency supported by substantial evidence should not be disturbed on appeal.

(Citations omitted).

On appeal, this Court reviews the decisions of the circuit court under the same standard of judicial review that the lower court was required to apply to the decision of the BOM. *See Martin v. Randolph Cty. Bd. of Educ.,* 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995).

At issue in petitioner's first assignment of error is whether the hearing on the summary suspension order was improperly conducted as a full hearing on the merits of the underlying complaint. Petitioner argues that he was expressly advised that the hearing would be conducted pursuant to West Virginia Code § 30-3-14(k), which contemplates disciplinary action on a temporary basis. He further argues that the BOM failed to strictly comply with the automatic discovery provisions set forth in West Virginia Code § 30-3-14(i), all in violation of petitioner's right to procedural and substantive due process. We find no error.

It is well settled that a "physician has an interest in his or her medical license which is a valuable right that may not be revoked without some form of due process being accorded to the physician." *State ex rel. Hoover v. Smith*, 198 W. Va. 507, 511, 482 S.E.2d 124, 128 (1997. *See also Modi*, 195 W. Va. at 242, 465 S.E.2d at 242 (observing that "'a license to practice a recognized profession is a valuable property right.'" citing *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953)). Petitioner's license was summarily suspended pursuant to West Virginia Code § 30-3-14(k), which provides that, if the BOM determines, based upon the evidence, that

> a physician's . . . continuation in practice . . . constitutes an immediate danger to the public, the [BOM] may take any of the actions provided in subsection (j) of this section on a temporary basis and without a hearing if institution of proceedings for a hearing before the [BOM] are initiated simultaneously with the temporary action and begin within fifteen days of the action. The [BOM] shall render its decision within five days of the conclusion of a hearing under this subsection.[5]

(Footnote added).

Notwithstanding petitioner's argument to the contrary, nothing in this statute precluded the BOM from proceeding on the full merits of the underlying complaint. Furthermore, the

---

[5] On March 6, 2015, petitioner waived the expedited timeframe requirements set forth in West Virginia Code § 30-3-14(k).

"Order of Summary Suspension of License to Practice Medicine and Surgery with Notice of Hearing" ("Notice") that was issued on February 25, 2015, advised petitioner that a hearing would convene "for the purpose of hearing evidence regarding the contents of this Order and the charges of professional misconduct set forth in the Amended Initial Complaint *and as set forth herein*."[6] (Emphasis added). The Notice further advised petitioner that "[h]e may present any witnesses and/or evidence that he desires to present on his behalf to show cause as to why his license to practice medicine and surgery in West Virginia should not be subject to continued suspension *and/or additional or further restriction*." (Emphasis added). Thus, petitioner's argument that the BOM improperly heard and acted on the full merits of the underlying complaint, in violation of his due process rights, is without merit.

We next address petitioner's claim that his due process rights were violated because the BOM failed to strictly comply with the discovery timeframes set forth in West Virginia Code § 30-3-14(i), which require the BOM to disclose evidence to the respondent physician within twenty days of the date of service of written notice of the charges or sixty days before the hearing, whichever is sooner. Arguably, these timeframe requirements would be inapplicable to summary suspension hearings. The expedited timeframe requirements for summary suspension hearings, as set forth in West Virginia Code § 30-3-14(k), require a hearing within fifteen days of the summary suspension and, thus, would be irreconcilable with the timeframes set forth in subsection (i). Regardless, the record reveals that, in fact, the BOM produced all potential exhibits and identified all potential witnesses to petitioner in advance of the hearing,[7] and that no evidence was introduced at the hearing that was not previously disclosed to petitioner. Petitioner does not now dispute this fact. Therefore, this Court concludes that the circuit court did not err in finding that petitioner's due process rights were not violated.

Next, we address petitioner's assignments of error related to the testimony of the BOM's expert, Dr. James Abel. Petitioner argues that Dr. Abel was improperly permitted to give opinions beyond those based solely on his review of the selected medical records. Petitioner contends that Dr. Abel improperly considered inadmissible hearsay evidence such as petitioner's personnel file from a previous employer that described a pattern of erratic and unprofessional behaviors; the BOM investigator's observations of petitioner when he was served with a

---

[6] After a new hearing date was set, a subsequent Notice of Hearing was issued, which incorporated by reference the prior Notice and reiterated that the hearing "shall be convened for the purpose of hearing evidence on the summary suspension of [petitioner] and the charges of professional misconduct set forth therein as well as set forth in the Amended Initiated Complaint . . . against [petitioner]."

[7] The BOM represents that one witness, BOM Executive Director Robert C. Knittle, was called as the custodian of the BOM records for the purpose of describing the BOM's function and authenticating certain records but was not formally identified as a potential witness before the hearing. However, the BOM represents, and petitioner does not dispute, that the documents introduced by the BOM and authenticated through Mr. Knittle were disclosed to petitioner before the hearing.

subpoena in his employer's parking lot; petitioner's failure to comply with a subpoena for patient charts from the Williamson Psychiatric Services Clinic; the petition for writ of prohibition filed with this Court seeking to prevent the BOM-ordered psychiatric and medical examinations; and a 2012 police report regarding possible prescription fraud and abuse. Petitioner argues that such evidence was irrelevant and unfairly prejudicial to petitioner's case.[8]

Despite petitioner's argument to the contrary, it is clear that Dr. Abel's report and testimony were based upon his review of the patient medical records. For example, Dr. Abel identified that petitioner prescribed Soma/carisoprodal to thirteen of the seventeen patients for the treatment of panic disorders and insomnia even though it is a muscle relaxant that is approved by the FDA solely for musculoskeletal pain; that petitioner prescribed Soma in connection with benzodiazapines (like Xanax), which increases the risk of abuse and addiction as well as depression of the central nervous system (CNS) and psychomotor impairment; that petitioner prescribed Soma and Xanax to patients who were also being prescribed opioid pain medication (like OxyContin) by other providers, increasing the risk of CNS depression, respiratory depression, apnea, and death; that petitioner continued to prescribe controlled substances to certain patients even though there were clear indications that they were abusing

---

[8] To the extent petitioner argues that Dr. Abel opined that suspension of petitioner's medical license was not warranted based upon the patient medical records he reviewed, we disagree. Petitioner points to Dr. Abel's testimony that, based upon his review of the medical records, he had concerns about petitioner's ability to safely care for patients and appropriately, but that "I don't think based on the patient charts that he should necessarily be suspended but disciplined, however." Petitioner's argument is misleading because it fails to acknowledge that Dr. Abel clarified his testimony in this regard. He testified that

> [y]ou had asked had I not seen the police reports and the records I believe from [petitioner's prior employer], if that factored into my decision, if I thought he should be suspended. Thinking back, if it was just looking at the patient reports, there is still good evidence there that he stole medication from a patient. That is in the patient's charts. Based on that, I would recommend the suspension. So I wanted to correct myself on that.
>
> Q: Is that the cornerstone of your opinion, this alleged stealing of the medicine?
>
> A: Not the cornerstone, the whole picture, but that pushes it over the edge to start off with. Looking at the documentation, his prescribing patterns, which are dangerous and don't meet with the current standards, I would say this is a physician who needs some tutelage, okay, disciplinary action. He is dangerous to the public. But when you cross over into doing that, that is someone that needs to be suspended immediately.

Given this testimony, we find no merit to petitioner's claim that Dr. Abel did not believe that suspension of petitioner's medical license was not warranted.

and/or diverting their medications; and that although petitioner ordered urine drug screens, the majority of patients reviewed failed multiple screens but the failures were not documented and no action was taken. These are but examples of the detailed findings of subpar care made by Dr. Abel in his report and about which he testified. Dr. Abel's ultimate opinion that petitioner's treatment practices violated the standard of care to such an extent that he endangered the safety of his patients was clearly supported by the medical records. Petitioner's claim that Dr. Abel improperly relied on inadmissible hearsay evidence in formulating this opinion is without merit.

In a related argument, petitioner argues that the BOM improperly delegated to Dr. Abel its authority to review the selected medical records and their investigative documents and to render opinions and conclusions without any apparent independent review by it or its members. Petitioner argues that the summary suspension order and, ultimately, the order revoking his medical license were based "exclusively upon Dr. Abel's report" and were, therefore, clearly wrong.

We find petitioner's argument to be unpersuasive. First, Dr. Abel evaluated petitioner's patient medical records and, based upon his review, recommended revocation of petitioner's medical license. The hearing examiner found Dr. Abel to be a credible expert in the field of psychiatry and substance abuse and addiction medicine. *See Webb v. W.Va. Bd. of Med.*, 212 W. Va. 149, 156, 569 S.E.2d 225, 232 (2002) (emphasizing that "'[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.'" quoting *Michael D.C. v. Wanda L.C.,* 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997)). Ultimately, the hearing examiner's recommendation to revoke petitioner's medical license was based upon the totality of the evidence and not solely on Dr. Abel's report and testimony. The hearing examiner found that LPN Hope Chaney, who worked with petitioner throughout his employment at the Logan Treatment Center, testified that petitioner's demeanor changed during the last five or six months of their employment there. She testified that petitioner's attendance became sporadic, that he became angry and overly emotional in front of patients, and that he had outbursts of screaming and swearing, which upset some patients. Ms. Chaney also described at least one incident in which she observed petitioner appropriate part or all of a patient's medication (Soma). The evidence further revealed that, after petitioner's employment at the Logan Treatment Center ceased on October 31, 2014, and the facility permanently closed on November 1, 2014, petitioner proceeded to write numerous controlled substance prescriptions for at least four patients on prescription pads from that facility. Finally, several witnesses testified that they personally observed petitioner to be in an impaired state at work. The hearing examiner found all of this evidence to be credible. Clearly, the hearing examiner's recommendation that petitioner's license be revoked was based upon substantial credible evidence and was not limited to Dr. Abel's report and testimony.

Further, to the extent petitioner argues that the BOM acted improperly in retaining Dr. Abel to review and evaluate the patient medical records, we find such an argument to be without merit. West Virginia Code § 30-3-14(b) provides that where there is an issue "whether any alleged conduct breaches an applicable standard of care, the evidence must be clear and convincing before the [BOM] may find that the physician . . . has demonstrated a lack of professional competence to practice with a reasonable degree of skill and safety for patients." To

this end, 11 C.S.R. § 3-10.13 authorizes the complaint committee to assign the matter to a medical consultant for review. Under this rule, "[t]he report of the medical . . . consultant shall contain a statement of the allegations, the facts, analysis of the complaint and care provided, a brief description of the records reviewed and a recommendation and finding." *Id. Cf.* Syl. Pt. 3, in part, *Farley v. Shook*, 218 W. Va. 680, 629 S.E.2d 739 (2006) (holding that "'"[i]t is the general rule that in medical malpractice cases[,] . . . want of professional skill can be proved only by expert witnesses." Syl. Pt. 2, *Roberts v. Gale,* 149 W. Va. 166, 139 S.E.2d 272 (1964).' Syllabus point 1, *Farley v. Meadows,* 185 W.Va. 48, 404 S.E.2d 537 (1991)."). Importantly, petitioner neither objected to the BOM's assignment of this matter to Dr. Abel nor engaged his own medical consultant or expert to rebut Dr. Abel's report or testimony. *See* 11 C.S.R. § 3-11.5(l) ("Every party . . . following the conclusion of the Board's presentation, shall have the right to submit rebuttal evidence."). We conclude that the BOM did not improperly delegate its authority to evaluate the medical records of petitioner's patients to its expert, Dr. Abel.

Petitioner's final two assignments of error are related and will be addressed together. Petitioner points out that the selected medical records that were evaluated by the BOM were limited to petitioner's psychiatric patients. Petitioner argues that because the BOM did not evaluate medical records relating to petitioner's addiction and substance abuse treatment practice, the BOM should have imposed a "less restrictive remedy, such as a period of supervision or restricting his practice to addiction and substance abuse treatment." According to petitioner, complete revocation is an unduly harsh sanction that was not supported by the competent evidence before the BOM.

Petitioner's contention that he should be permitted to practice substance abuse and addiction medicine is beyond the pale. Petitioner has violated a plethora of laws related to the prescribing of controlled substances. *See* n.4.  He prescribed combinations of medications that increased the risks of addiction, CNS and respiratory depression, and even death; prescribed Soma and Xanax to patients without considering that the patients were also being prescribed opioids by other physicians, the combinations of which could be fatal; prescribed controlled substances to patients who were clearly abusing and/or diverting such medications; failed to evaluate patients for potential drug interactions or substance abuse issues through the use of monitoring programs; failed to inform patients of potential side effects of medications prescribed; failed to inform or offer alternative treatments or therapies in lieu of controlled substances; and diagnosed patients with panic disorder without sufficient documentation to justify the diagnosis. Furthermore, there was evidence that petitioner stole medications prescribed for his patients and wrote prescriptions for controlled substances on a prescription pad from a facility where he no longer worked and that was no longer open for business. Additionally, several witnesses reportedly observed petitioner in an impaired state at work. Common sense dictates that petitioner should not be permitted to practice medicine in any field, least of all the field of substance abuse and addiction medicine. Given these facts, as well as petitioner's prior disciplinary history, it is clear that complete and total revocation of petitioner's medical license was the appropriate sanction. *See Webb*, 212 W. Va. at 151, 569 S.E.2d at 227 (holding that "'[t]he "clearly wrong" and the "arbitrary and capricious" standards of review [as set forth in West Virginia Code § 29A-5-4(g)] are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis.' Syllabus Point 3, *In re Queen,* 196 W.Va. 442, 473 S.E.2d 483 (1996).").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  May 11, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker